6p 311
104 63

## EZELL *vs* ENGLISH.

1. As a general principle, a bill of lading vests in the consignee, the legal title in the goods shipped : but the title thus transferred, may be re-vested in the owner, and where the consignee has not accepted the consignment, and. disclaims all interest in the goods shipped, the court will intend that the title was so re-vested..

For the decision of the other points made in this case, see the case of Sampson and Lindsay vs Gazzam, page 123 of this volume.

Error to the Circuit court of Autauga county.

Action on the case, against defendant, as a common carrier. Thomas M. English, the plaintiff, who sued for the use and benefit of John Low, declared, at the Spring term of Autauga Circuit court, eighteen hundred and thirty-two, against Ezell, the defendant— for that, said defendant, at a certain time before that mentioned, was the owner of a certain water-craft, called a steam-boat, named Mobile, and a common carrier on said boat, on a certain highway and water course, called the Alabama river, and on the Mobile river, from the town of Montgomery, Alabama, to the port of Mobile, Alabama, for hire and reward ; and while the said defendant was such common carrier, for hire on the said water-course, on said boat so named as aforesaid, and subject and liable, as such, to receive and safely convey, on the said steam-boat, all such goods, wares and merchandise and property, as was usually conveyed on such craft from Montgomery to Mobile, and from Mobile to Montgomery, for any of the citizens of the State, for reasonable reward and compensation—the said plaintiff, at the special instance and request of the said defendant, on the twenty-seventh day of February, eighteen hun-

dred and thirty-one, at Montgomery, aforesaid, put and placed on and upon the said steam-boat, Mobile, then lying at the town of Montgomery, Alabama, certain goods and chattels, of great value, to wit, forty-six square bales of cotton, to wit, of the value of six thousand dollars, to be, within a convenient and reasonable time, carried and conveyed in said boat, from the said town of Montgomery, Alabama, to the port of Mobile, Alabama, and there safely delivered to said plaintiff, or his agent, in the like good order and condition, (the dangers of the river only excepted,) for certain reasonable freight, hire and reward, then and there agreed on, to be paid to the said defendant, to wit, for one dollar per bale ; and said defendant, as such common carrier, then and there, to wit, on the day and year aforesaid, at Montgomery aforesaid, received said cotton, being of the value aforesaid, on and upon the said boat, and undertook safely and securely to carry and convey the same in like good order and condition from the town of Montgomery, Alabama, on the said boat, as such common carrier, from the said town to the port of Mobile, within a convenient and reasonable time, and then, to wit, at said port of Mobile, safely to deliver the same, (the dangers of the river only excepted.) Nevertheless, the said defennant, not regarding his said undertaking and duty in that respect, as such common carrier, by water, on said steam-boat, did not, nor would, safely carry and convey the said bales of cotton, of the number and value aforesaid, from Montgomery aforesaid, to Mobile aforesaid, and safely deliver the same, within a reasonable time, to the plaintiff, or his assigns, as by his duty he was bound to do; but, on the contrary thereof, had wholly failed and refused so to do,—and although a reasonable and convenient time had long since elapsed, the said defendant, although not prevented or hindered by dangers of the river, had not delivered the said bales of cotton, or either of them,

to the said plaintiff, or his consignee, at Mobile, afore-said, but had wholly failed so to do, and still failed and refused so to do, &c.

To this declaration, *non culpabilis* was pleaded, and issue taken to the country; and at the October term of the same court, eighteen hundred and thirty-four, came a jury of good and lawful men, to try the issue aforesaid, who, upon their   , said, they found for the plaintiff, and assessed his damages at two thousand three hundred and forty-one dollars and thirty-eight cents. It was, therefore, considered by the court, that the plaintiff recover of the defendant the said sum of two thousand three hundred and forty-one dollars and thirty-eight cents, the amount so assessed by the jury aforesaid, together with his costs, in and about his suit in this behalf expe....   or which execution might issue, &c.

From this judgment, there was a writ of error to said court, returnable to this court. The bill of ex-ceptions tendered below, stated that on the trial of the cause, the plaintiff produced a   read to the jury, (after having proved by L. Coope who signed the same, that he was clerk of the ste m. boat, Mobile, and as such, authorised to sign bills of la ng for the same,) a bill of lading in the following terms:—"Shipped, by John Gindrat & Co. in good order, on board the steam-boat, called the Mobile, whereof Young is at present master, now lying at Montgomery, and bound for Mobile, to say, forty-six square bales of cotton, marked, &c. as per margin—which are to be deliver-ed in like good order, at the aforesaid port of Mobile, (the dangers of the river only excepted,) to T. M. English, or his assigns, he or they paying freight for the said cotton, one dollar per bale. In witness where-of, the master of the said boat hath affirmed to three bills of lading, all of the same tenor and date, one of which being accomplished, the others to stand void.— Dated at Montgomery, February 27th, 1831.

[Signed]                                    " L. Cooper."

The plaintiff further proved to the jury, the weight of said cotton, and that it was shipped to him, as the factor of John Low, and that the cotton was to have been sold, and the proceeds to be paid to the said Low. The plaintiff further proved, that the said steamboat and cotton were destroyed by fire, on the second day of March, eighteen hundred and thirty-one, while on her voyage to Mobile; and here rested his case.

The defendant then introduced witnesses, who stated facts, tending to shew, that the said boat was properly manned, and managed in a skilful and careful manner; that the fire originated in some manner wholly unknown to the witnesses, but without any want of care or diligence, on the part of those who were employed in managing the same: that the utmost endeavors were made to extinguish the fire, and to save the cotton, and that the boat was not abandoned, or the exertions made to save her slackened, until it became dangerous, from the heat of the flames, to attempt to do any thing further, to save the same. That all the officers and crew of the boat were skilful, diligent and careful men, and attended to their duties in a skilful, careful and vigilant manner. The defendant further proved, by two witnesses, that the plaintiff, in a conversation with one A. H. Gazzam, one of the owners of said boat, denied that he had any interest, whatsoever, in any suits commenced for cotton lost in the said boat,—denied that he ever was the owner of any cotton, burnt on the said boat, or that he had any interest therein; and that this suit was commenced without any instructions from him, and without his consent.

The defendant further proved, that steam-boats were of modern invention: that they were navigated by the agency of fire being placed under boilers of water, thus producing steam, and that boats of this description cannot be navigated without the agency of fire: that it is impossible, under any mode yet dis-

covered of preventing sparks from flying from the furnace and chimneys attached to a boat: that according to the usual and customary mode of conveying cotton, in steam-boats, it is unavoidably exposed to the action of some of the sparks, which sometimes escape from the chimneys and furnace.

The defendant further offered to prove, by numerous witnesses, that they were in the habit of shipping cotton and receiving goods, by steam-boats, on the Alabama river, and had so been, long previous to this accident: that they were merchants and steam-boat captains and planters, well acquainted with the usage and custom of merchants and freight, on the said river, and had so been for a long time previous to said burning; and that, by said usage and custom, it was well ascertained that a loss arising from fire on board a steam-boat, in the ordinary prosecution of her voyage, without the default or negligence of those having charge of the same, was a danger of the river, and within the exception of the bill of lading,—which evidence the court rejected.

The defendant further offered to prove, by merchants and steam-boat captains, that they had been for a number of years, and ever since the introduction of steam-boats on the Alabama river, and were, at that time, conversant with the meaning of the terms, "dangers of the river only excepted," as contained in the said bill of lading; and that, by the usage and custom of merchants and freighters, on the Alabama river, ascertained by general practice, custom and usage, the said words were understood to include a loss happening by fire, in the ordinary course of steam navigation, without any default or negligence on the part of those havng the management of the boat,— which evidence the court rnjected.

To all of which rejection of testimony, the defendant, by his counsel, exceped. Some evidence was offered by the plaintiff, to shew that on a previous trip,

performed by the said boat, the officers and crew of the same had conducted themselves with negligence. The defendant introduced the certificate of the harbor-master and wardens of the port of Mobile, to shew that the said steam-boat, Mobile, was in all respects river-worthy, according to the statute in such case made and provided. On this state of facts, the defendant requested the court to charge the jury,—

1. That, under the contract, as proven, the defendant was bound to deliver the cotton named in the bill of lading, to the plaintiff, in Mobile, the dangers of the river only excepted; and that if the cotton, without any default or negligence, on the part of those employed in the transportation of the same, was destroyed by fire, it was a loss within the terms of the exception to the contract, and the defendant was not liable,—which charge the court refused to give.

2. That if the jury believed from the evidence, that fire was the necessary agent used in the navigation of said steam-boat, and by the necessary use of the same, without any default or negligence on the part of those employed in the management of the said steam-boat, the said cotton accidentally took fire, and was consumed—in that event, the defendant was not liable,—which charge the court refused to give.

3. That if the cotton was burnt or destroyed by the dangers of the river, that in such event the defendant was not liable,—which charge the court refused to give, in the terms asked for,—and charged the jury, that under the contract of the parties, the defendant could only be excused for a non-delivery of the cotton to the plaintiff in Mobile, by the act of God or the enemies of the State, or unless the same was delayed by dangers of the river, of which dangers the jury was to determine under the instruction of the court. That the dangers of the river did not extend to fire,

unless it was occasioned by the immediate act of God, such as lightning, &c.

4. That if the jury believed from the evidence, that the plaintiff was not the owner of the cotton, and had never accepted the consignment, and that the same belonged to John Low, or John Gindrat & Co,—in that event, the present plaintiff having no interest in the cause of action, could not recover:—which charge the court refused to give, in the terms asked for—and charged the jury, that if they believed that plaintiff, English, was a factor in Mobile, and the cotton was shipped to him by John Low, in that event the said Low was entitled to use his name in conducting the suit for his benefit, although the said English might have no interest in the same, and that he could not, by any disclaimer of interest, deprive the said Low of this right, so to institute said suit.

5. That the contract, as proved by the bill of lading, was different from, and variant with the one described in the declaration; and that consequently, they should find a verdict for the defendant; which charge the court refused to give.

To all which rejection of testimony, refusals to charge, and charges as given, the defendant excepted, &c.

The plaintiff in error here assigned :

That the court below erred in the several points stated in the bill of exceptions, in excluding testimony, and giving and refusing to give the charges as there stated, and prayed that the judgment might, in all things, be reversed.

*Campbell*, for the plaintiff in error.
*J. H. Thorington*, contra.

ORMOND, J.—In this case, the same question of law arises as to the admissibility of testimony to explain the import of the term "dangers of the River" in a bill

6 P.                    40

of lading, which arose in the case of *Sampson & Lindsay* vs. *A. H. Gazzam*, decided at the last term of this court.* The record also discloses that the defendant below proved, that the plaintiff in the court below, denied that he had any interest whatever in the suit; that he was not the owner of any cotton burned on the boat; and that the suit was commenced without his consent. Upon this evidence the court was asked to instruct the jury "that if they believed from the evidence that the plaintiff was not the owner of the cotton, and had never accepted the consignment, and that the same belonged to John Low or John Gindrat & Co., in that event the present plaintiff having no interest in the cause of action, could not recover." The court refused to give this charge, and charged the jury "that if they believed that plaintiff, English, was a factor in Mobile, and the cotton was shipped to him by John Low, in that event the said Low was entitled to use his name in conducting the suit for his benefit, although the said English might have no interest in the same; and that he could not, by any disclaimer of interest, deprive the said Low of this right to institute said suit." To the instruction thus refused, and to the one given, an exception was taken, and the matters of law theron arising, are now assigned as error.

The instruction of the court cannot be maintained.

It is true that a bill of lading vests in the consignee the legal title in the goods shipped; but the title thus transferred, may be revested in the owner; and this must have been the fact, if the consignee had no interest in the subject consigned. To this effect is the decision of this court at the last term, in the case of *Wm. Jones, Jr.* vs. *Sims & Scott.*†

The remaining points arising in this case have all been decided in favor of the plaintiff in error, in the case first mentioned.

The judgment must be reversed, and the cause remanded.

---

*Page 123.                    †Page 139.