## HIBLER *vs.* McCARTNEY.

[ACTION AGAINST COMMON CARRIERS FOR LOSS OF COTTON.]

1. *Conclusiveness of adjudged cases.*—The correctness of the decision of this court, relative to the construction of a bill of lading given by a common carrier, which was made nearly twenty years ago, and which has been twice re-asserted, again quoted with approbation, and never departed from or assailed in any subsequent case, cannot now be questioned.
2. *Parol evidence of custom as to construction of bill of lading.*—Parol evidence is admissible, to show that the words "dangers of the river," as used in a bill of lading, by usage and custom include dangers by fire.
3. *Charge upon effect of evidence.*—The court may instruct the jury, that certain facts, hypothetically stated, constitute negligence in a common carrier.

4. *What constitutes negligence in common carrier.*—The owners of a steamboat are liable, as common carriers, for the loss of cotton, which was stored on the forecastle of the boat, torn, ragged and uncovered, and which was destroyed by fire communicated by sparks from a torch-light on the boat.

5. *Admissibility of custom on question of negligence.*—Evidence of a custom to carry torch-lights at night, on board of steamboats, cannot be received to affect the liability of the owners for a loss by fire caused by the negligent use of such lights.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS action was brought by the appellant, against the owners of the steamboat *Eliza Battle*, as common carriers, to recover damages for the loss of seven bales of cotton, which were shipped on board of said boat at Warsaw, in Sumter county, to be delivered to Lyon, Hudson & Bush, in Mobile; and which were destroyed by fire while on the boat. The defendants pleaded, 1st, the general issue; and, 2d, " that by the terms of the contract under which defendants undertook to carry and deliver said cotton, the dangers of the river and of fire were expressly excepted, and said cotton was lost by fire, not from any negligence or want of care on the part of defendants, but from one of those casualties and dangers incident to the navigation of the Tombeckbe river, and without any fault on the part of defendants, their agents, or servants." The plaintiff replied to the second plea, 1st, " that said cotton was destroyed by fire, occasioned by and through the negligence, carelessness, and improper conduct of defendants, their agents or servants;" and, 2d, "that by the terms of the contract under which defendants undertook to carry and deliver said cotton, the dangers of fire were not expressly excepted, and said cotton was not destroyed by one of those dangers or casualties incident to the navigation of the Tombeckbe river, and for which defendants are not liable under their said contract, but said contract only excepted the dangers of the river."

On the trial, as appears from the bill of exceptions, the plaintiff proved the shipment of the cotton on board of the boat on the 25th March, 1854, his ownership of it, the defendants' ownership of the boat, and their failure to

deliver the cotton to the consignees. He also introduced in evidence, after proof of its due execution, the bill of lading given by the officer of the boat, which was in the usual form, and which stipulated that the cotton was to be delivered to the consignees in good order, " the dangers of the river only excepted." The defendants then offered to prove, " by several witnesses, that the term ' dangers of the river,' as used in the bill of lading, by usage and custom included losses by fire." The plaintiff objected to the admission of this evidence ; but the court overruled his objection, and admitted the evidence ; and the plaintiff excepted.

" The defendants then introduced evidence, tending to show that said cotton was destroyed by fire. No witness was able to state how the fire originated. There was evidence tending to show that it originated in the cotton on the larboard side of the boat, between the derrick and the steps which went up from the boiler deck to the second deck, about fifteen feet from the furnaces, and in the third tier of cotton from the furnaces ; that it occurred when the boat was a few miles below Gainesville, between 12 and 2 o'clock at night ; that the river was low, and the night dark ; that there was a torch-light, made of pine-knots, hung out on the larboard side of the boat, about twenty feet from where the fire was first seen, and separated from the same by one tier of cotton ; that the boat was running with a slight wind ahead ; that the cotton on the forecastle, where the fire was discovered, was torn, ragged, and not covered by any thing ; and that there was nothing between it and the torch-lights, to protect it from the sparks of the torch-lights. There was evidence, also, tending to show that steamboats, navigating said river at night, usually carried torch-lights ; that it was not usual for them to cover the cotton with tarpaulins or any thing else ; that torch-lights were necessary to the safe navigation of said river on a dark night, and the custom was to use them ; and that the omission to use them would, in the opinion of the witnesses, be considered unsafe. The defendants showed, also, that there was but one torch-light ; that it was held below the guards of the boat, by a

careful hand; and that the guards were about three feet above the water. The plaintiff introduced the deposition of one Rogers, who testified, that he was, and had been for seventeen years, the keeper of the warehouse at Warsaw, and was acquainted with the customs and usages of the river; and that the term, 'dangers of the river,' according to the understanding of the trade on said river at Warsaw, did not include casualties by fire.

"The court charged the jury, that if they believed from the evidence that the exception, 'dangers of the river,' as used in the bill of lading, according to the usage and custom of the trade included fire, then the plaintiff could not recover, unless the fire originated through the defendants' negligence or want of care; that if they believed fire to be a danger of the river, and that the cotton was destroyed by fire, the burden of proof was then shifted to the plaintiff, to show that it originated through negligence.

"The plaintiff excepted to this charge, and then asked the court to instruct the jury as follows:

"1. That by the term 'dangers of the river only excepted,' as used in the bill of lading which is the contract between the parties to this suit, the defendants are not excused, if the jury find that the plaintiff's cotton was destroyed by fire.

"2. That no custom or usage can add to, vary or contradict the written express contract of the parties.

"3. That the exception, 'dangers of the river,' is a condition separate and distinct from dangers of fire; and that the defendants are not excused, under the bill of lading in this case, even though the jury should believe from the evidence that the plaintiff's cotton was destroyed by accidental fire.

"4. That although the jury may believe from the evidence that it was usual for steamboats, running at night, to carry torch-lights; and that they do not, under these circumstances, usually cover the cotton with tarpaulin or anything else; yet, if they also believe that the cotton was exposed to the sparks from the torch-lights, and that the fire in this case did originate in that source,—this is, *prima facie*, such negligence as will make the defend-

ants liable, although the bill of lading excepts the dangers of fire.

"5. That if the jury should believe that the cotton on the forecastle of the steamboat was torn and ragged, and was uncovered, and exposed to the sparks from the torch-lights; and that the fire originated in said cotton from the torch-lights, and was communicated to plaintiff's cotton,—this is such negligence as will render the defendants liable in this suit, although the jury should believe that it was usual for steamboats to carry torch-lights, and notwithstanding the dangers of fire are excepted in the bill of lading."

The court refused each one of these charges, and the plaintiff excepted; and he now assigns as error the admission of the evidence to which he objected, the charge given by the court, and the refusal of the several charges asked.

D. CHANDLER, and THOS. H. HERNDON, for the appellant. 1. It is admitted, that the ruling of the court in the admission of parol evidence to show that the term "dangers of the river," as used in the bill of lading, included dangers by fire, is fully sustained by the case of Gazzam v. Sampson, 6 Porter, 123; but that case, it is submitted, is wrong in principle, unsustained by authority, contrary to public policy, and ought to be overruled.—19 Ala. 383; 2 Smith's L. C. 512; 13 Pick. 176; 2 Barr, 237; 5 Wendell, 187; 14 Wendell, 30; 7 Yerger, 340; 3 C. & H.'s Notes, 1439; 1 Bibb, 371; 3 Hawks, 580; 4 Ham. (Ohio) R. 334; 2 Sumner, 568; 5 Yerger, 82; 4 Yerger, 48; 3 S. & P. 136; 4 S. & P. 382; 3 Watts, 178; 4 Rawle, 195; 2 John. 327; 2 Wash. C. C. 24; 6 Binney, 416; 9 Metc. 306; 13 Ala. 824; 28 Ala. 704; 6 Cowen, 266; 21 Wendell, 194; Chitty on Contracts, 100; Angell on Carriers, §§ 228–30; 1 Hall, 619; 15 Mass. 431; 3 Hill's (N. Y.) R. 593.—If the case is wrong in principle, as is abundantly shown by these authorities, there is no reason why it should not be overruled. It settles no rule of property; no rights have grown up under it; and no hardship will result from the overruling of it.

33

2. The fourth and fifth charges asked, ought to have been given. The facts stated made out a clear case of negligence against the defendants, even if they could avail themselves of the custom which they sought to establish.

E. S. DARGAN, *contra.*—1. The rulings of the court on the evidence, in the charge given, and in the refusal of the first three charges asked, are fully sustained by Gazzam v. Sampson, 6 Porter, 123.

2. A common carrier is bound to carry the goods in the usual way.—Flanders on Shipping, 207. The evidence shows, that the cotton was stored, and the boat navigated, in the usual way; and the record fails to show, that the defendants did any act which they ought not to have done, or omitted to do any thing which they ought to have done, according to the established usages of the trade.

3. Negligence is a question of fact for the jury, which the fourth and fifth charges asked would have taken from their consideration.—Angell on Carriers, 27, 28; Story on Bailments, § 11; 5 Shep. (18 Maine) R. 174; 3 Mason, 132; 3 Bing. (N. S.) 208; 11 Wendell, 25; 12 Howard, 280; 9 C. & P. 380.

WALKER, J.—In the case of Sampson & Lindsay v. Gazzam, 6 Porter, 123, this court decided, that it was permissible for a steamboat owner, when sued for the loss of goods by fire, to show by parol that the exceptive words, "dangers of the river," in a bill of lading, by usage and custom included dangers by fire. That decision was made nearly twenty years ago; at the next succeeding term of the court, was approved, and its doctrine re-asserted, in the cases of Ezell v. English, 6 Porter, 311, and Ezell v. Metter, 6 Porter, 307; and was quoted with manifest approbation, as late as 1848, in the opinion in Knox v. Rives, Battle & Co., 14 Ala. 249. It has never been departed from, or assailed, in any subsequent decision; but has, for nearly twenty years, stood in our reports, an unassailed and approved exposition of the law of the

class of contracts to which it pertains. It must necessarily have entered as an element into the contracts of carriers by water in this State, controlling the terms of the clause designed to except from the stringent rule of responsibility prescribed by the common law. We must presume that, in so long a time, it may have become known, and passed into a rule of contract, alike with carriers by water, and their customers. To depart from such a decision, would produce the same injustice which results from retrospective legislation. It would, in effect, say to the persons affected by it, Although you had the assurance of a decision of the highest judicial tribunal of the State, standing undisputed for nearly twenty years, and afterwards twice approved, of the law applicable to your contract; and although, when you made your contract, you and the other contracting party arranged the stipulations in reference to that decision; yet your rights and your liabilities shall be settled according to a different view of the law. For these reasons, we decline to consider and pass upon the arguments and authorities which have been adduced for the purpose of showing the incorrectness of the above stated principle settled in Sampson & Lindsay v. Gazzam. That principle must now be regarded as the settled law of the State. Maintaining that principle, we must approve the ruling of the court in the admission of the evidence objected to, and also the charge given by the court.

The first and third charges asked by the plaintiff, would have taken from the jury the consideration of the question, whether the expression, "dangers of the river," did not, by custom and usage, have a meaning sufficiently comprehensive to include dangers by fire; and were, on that account, properly refused.

The second charge asked was, that no custom or usage could add to, vary, or contradict the written express contract of the parties. This charge was abstract, unless it could effect the exclusion of the testimony as to the import, according to usage and custom, of the words "dangers of the river." The charge was not entitled to any operation on the case, and would have contributed to

the confusion of the jury, by opening the door for their consideration of the question, whether the principle of law asserted by the charge required an exclusion of the evidence as to the custom. There was no error in the refusal of this charge.

If the facts presented in the fifth charge asked admit of no inference opposed to the conclusion that the defendant was guilty of negligence, it should have been given. Stanley v. Nelson, 28 Ala. 515; Eldridge v. Spence, 16 Ala. 682; Nelms v. Williams, 18 Ala. 650; Bryan v. Ware, 20 Ala. 690; Williams v. Shackelford, 16 Ala. 318; Henderson v. Mabry, 13 Ala. 713.

This charge suggests the question, whether or not the holding of a torch by a carrier, in such manner as to expose uncovered, ragged cotton to the sparks from it, and thus to ignite it, is negligence. Does this conduct involve the omission of that caution and care, which a prudent man would exercise about his own business? This is the test of negligence; and when this test is applied, the conclusion is inevitable, that the act was clearly one of negligence. No prudent man, in taking care of his own ragged and uncovered cotton, would hold a torch in such a manner that sparks would fall upon it. The facts presented in the charge admitted of no other inference than that which the court was asked to draw; and it was, therefore, the duty of the court to give it.

This result would not be changed by the existence of a custom of carrying torches at night. A custom, which would authorize a carrier to carry a torch, in such a manner as to endanger the cargo, would be violative of law and good faith, and could not receive judicial sanction. Barlow v. Lambert, 28 Ala. 704. If a boat cannot be run at night, without the aid of torches, carried in such a manner as to endanger the cotton on freight, to stop is the plain duty of the carrier. Custom cannot relieve from the obligation to bestow, even in guarding against the excepted danger from fire, reasonable care and diligence in taking care of the freight. The law cannot justify a postponement of the safety of the cargo, to the desire of a speedy passage to the point of destination.

We do not inquire whether the fourth·charge ·asked should have been given, as the fifth will cover the entire ·case so far as the question of negligence is concerned.

The judgment of the court below is reversed, and the cause remanded.