Mr. Justice Shepard
delivered the opinion of the Court:
i. The administratrix appointed in the State of Maryland has instituted this suit under the authority of tibe act of Congress which permits foreign administrators and executors to bring suits in the courts of the District of Columbia in the same manner as if their letters had been granted therein. 24 Stat. at Large, 431.
The right of action is claimed under the statute of West Virginia, within which State intestate’s death occurred. It is conceded that this statute is substantially like that of the District of Columbia on the same subject, save that by the latter the action must be brought within one year, while by the former the time is two years. Plaintiff first brought suit in Maryland, where it was decided that for want of similarity between the statutes of the two States it could not be maintained. 72 Md., 145. Owing, doubtless, to the delay caused by the litigation in Maryland, suit was not filed here until after the expiration of one year from the death. The plea of limitation of one year was overruled in the special term, and this was affirmed on appeal taken to the General Term, which held that the time within which the suit might be brought is a part of the right of action, and that the provision of our statute limiting the time to one year must be regarded as applying to causes of action arising in the District, and not as a limitation upon all actions of that nature. On the second trial this question was regarded as concluded by the judgment of the General Term and was not again raised. We are now asked by one side to reopen it, while our right to do so is denied by the other. The reconsideration asked for involves the question of the proper construction of the two statutes, as well as how far we are to be considered as bound by the decision of the General Term in a case which, after a trial had in accordance therewith, has been a second time appealed. These are grave and difficult *448 questions, and as their decision is not necessary in the view which we have taken of the case on other points, we will dismiss them with the remark that both are to be considered as open for future discussion and determination.
2. The appellant’s first assignment of error is upon the refusal of the court to permit her to prove the usual width of bridges upon the Pennsylvania Railway. There was no error in this. Had there been, it was more than compensated by the admission, without objection, of the evidence of the witness Thompson, who testified to the width of modern bridges upon railways generally, and in addition gave the opinion that the bridge in question was not of the proper width, all of which went uncontradicted.
Railway bridges should be so constructed, in all respects, as to be reasonably proper and safe for the purposes of their ordinary use. Any failure of this duty, through the direct agency of which an injury occurs, would be negligence. But a railway company is not bound to adopt a plan of construction observed by railways generally, much less one in practice by any one company in particular. What is customary or usual among others in the same business has sometimes been held to be a pertinent circumstance to aid the jury in determining the duty of one with respect to the same matter. Daniel v. R. R. Co., L. R. 3 C. P., 224; Abel v. Canal Co., 128 N. Y., 666. Some well reasoned cases, however, have held that where negligence is the foundation of the action, a general usage even is not admissible for the purpose of showing that it does or does not exist. Bailey v. R. R. Co., 107 Mass., 496; Hill v. R. R. Co., 55 Me., 438, p. 444-5 ; City of Champaign v. Patterson, 50 Ill., 61; Hibler v. McCartney, 31 Ala., 501; R. R. Co. v. Evansich, 61 Tex., 3. We are not called upon here to decide between these two opinions.
3. By the second assignment of error, the plaintiff brings for review a ruling of the court made in the examination of the witness, John H. Anderson, who was the only companion of the intestate in the postal car at the time of his death. The *449 question arose in this way: Anderson was called as a witness by plaintiff and testified as set out in the preliminary statement of the case. In reply to plaintiff’s question, he said that the mail bag was not jammed in the catcher so as to require any unusual force to remove it. This was a material question in the case. No other witness was called to testify to this particular fact. Plaintiff, claiming surprise at his answer, and expressing a desire to refresh the memory of the witness, offered to interrogate him in regard to statements made on a former trial. This was refused, but no exception was noted at the time. Near the close of the trial he was recalled for further cross-examination by defendant. Plaintiff then propounded the following question: “Did you not state on a former trial of this case that the mail bag was wedged into the catcher so hard that it took a great deal of force and two men to get it out?” Upon defendant’s objection, the court refused to permit the question to be answered, on the ground that, as the witness had no adverse interest and was not one — as a witness to a deed or a will, etc.— whom the law compelled plaintiff to call, this method of examination was not proper. It may be added also that there is nothing in the record tending to cast suspicion upon the integrity or good faith of the witness unless it be such as might be implied from his failure to testify with respect to this one circumstance, just as he may have done upon a former trial. Some of the well established exceptions to the general rule against permitting a party to discredit or contradict his own witness are stated by Mr. Greenleaf in his justly esteemed treatise on the Law of Evidence, but this case is not within them, i Gr. on Ev., Sec. 444-5. It would be extremely difficult if not impossible to frame a rule covering all cases in which this question may arise. Unquestionably a corrupt or treacherous witness should not be permitted to destroy or cripple the case of a party who, in good faith, relies upon his truthfulness, without some redress. But, at the same time, it is equally just and fair not to permit-a fact to be given to the jury in an indirect way which cannot be *450 proved in any other. In general, we think it safe to say, if a witness, to the well-founded surprise of the party calling him, testifies to a fact which tends to destroy his right of action or defense, as the case may be, or contradicts evidence which he is reasonably relied on to corroborate, the party should be permitted to ask him if he had not made different statements on a former occasion; and in extreme cases, in the event of his denial, it might be permissible to prove by others that he had made them. But where a witness is called to make*1 out a case and fails to testify to a material fact or circumstances as hoped or expected by the party calling him, it would subserve no useful and legitimate purpose to permit the fact to be thus brought before the jury which could not be proved in any other way. Melhuish v. Collier, 15 Q. B., 878; S. C., 69 E. C. L., 878, a case specially relied' on by plaintiff, is a very different one to this. It was an action for assault and battery. The witness on an examining trial had testified to facts which made out a case for plaintiff. On the trial of the action for damages, she not only failed to testify as before, but stated facts which completely exonerated defendant.. She also testified that she had been suborned by plaintiff at the trial referred to. It was held proper to permit the plaintiff to ask her if she had not made a contradictory statement on the other trial, and also to introduce evidence to rebut the charge of subornation. Patteson, J., said that while it was proper in such case to permit the question to be asked, it would not be proper to allow the contradictory statement to be read for the purpose of contradicting her. He said, “ There is a distinction between asking questions of a witness in the box as to statements he may formerly have made, and calling other witnesses to say, in contradiction of him, that he made such statements.” Coleridge, J., seemed to think it proper, under some circumstances, which do not exist, however, in this case, to permit a witness’s recollection to be refreshed by calling his attention to different statements formerly made.
In this case, to permit the witness to be asked if he had *451 not made a different statement upon a former trial would not have answered the purpose of plaintiff without the further permission to contradict him with that statement; nor would the admission of both have served any useful purpose, because the court would have been compelled to tell the jury that the former statement, if made, could not be considered by them as evidence of the fact which it contained; and there was no other evidence, whatever, to the same fact. Moreover, we think that the extent to which a party calling a witness who deceives or disappoints him should have the right to examine him as to former contradictory statements, ought to be left largely to the discretion of the trial judge, subject to review only in cases of manifest error. We find no such error in this instance.
4. The remaining question presented by the record is: Did the court err in directing the jury to find a verdict for the defendant? Following the rule laid down by the Supreme Court of the United States, we said, in the case of R. R. Co. v. Carrington, ante,p. 101, “ The right to have the facts determined by the jury ceases only when but one reasonable view can be taken of the evidence, and of its every intendment, and that view is utterly opposed to the plaintiff’s right to recover.” By that rule the evidence in this case must be tested.
It is conceded that the plaintiff’s intestate occupied the legal relation of passenger to the defendant and was entitled to a similar degree of care. What .constitutes culpable negligence or want of proper care varies necessarily with the surroundings and circumstances of each particular case. The care, therefore, due a regular passenger, whose place is inside the car, may be less, with respect to outside dangers, like the one in this case, than that due the intestate, if he was compelled, in the regular performance of his duties, to operate at times on the outside of the car, though ordinarily his work was on the inside; or than that due a train employee whose duties required him at times to be on the outside of the cars and exposed to danger from structures near the *452 track. So, a train employee whose duties might require him to stand upon the roof or platform of a car and expose himself to contact with structures dangerously near the track might recover for an injury so received, when a passenger, riding there, in violation of a regulation of the carrier, and hurt by reason of the exposure alone, would be deemed guilty of contributory negligence and thereby barred of recovery. Ordinarily, when sitting in his seat on the inside of the car, it is the duty of the passenger not to expose himself to outside dangers, and when hurt through a plain violation of this duty, without special circumstances of justification or excuse, it has been quite generally held that he could not recover for injuries so received. Whilst the plaintiff’s intestate is to be considered as a passenger, it cannot be presumed, from the mere fact of his having been killed while en route, that' the injury was caused by the negligence of the defendant. That he was found dead in the car, killed by coming in contact with the bridge post, does not of itself shift the burden of proof to the defendant. The burden is always upon the plaintiff to make out his case. Where negligence furnishes the cause of action it must be proved by the party alleging it. There are some cases in which it has been said that the law presumes negligence on the part of the carrier from the mere happening of an accident to a passenger. This is not a strictly accurate statement of the law. The most that can properly be said is that when an injury occurs through some accident to the means of transportation, which is under the management of the carrier’s employees and which, if they exercise proper care, cannot ordinarily happen, it affords reasonable evidence, in the absence of explanation, from which negligence may be inferred. Transportation Co. v. Downer, 11 Wall., 129; Inland and Seaboard Coasting Co. v. Tolson, 139 U. S., 555 ; R. R. Co. v. State, use of Mahone, 63 Md., 135 ; Curtis v. R. R. Co., 18 N. Y., 543 ; R. R. Co. v. Gibson, 96 Pa. St., 83 ; R. R. Co. v. Robinson, 73 Tex., 277 ; Scott v. London Docks Co., 3 H. & C., 596.
*453 In this case, there was no derailment of the car, no injury to it, or the track, no accident of any kind affecting it, or that could have affected any passenger inside the cars. There is no legally established fact upon which to found the presumption or inference of negligence on the part of the defendant. The sole foundation for the inference of negligence exists in the fact that intestate was instantly killed by coming in contact with the post of a bridge which is not as wide as is now customary in the construction of new bridges. As we have heretofore said, it created no presumption of negligence in defendant that it did not rebuild and widen its bridge because other railways were adopting a greater width. Nor was any such presumption created by the testimony of the expert who said it was dangerous to build bridges as narrow as the one in question to passengers who might protrude their heads or limbs from the windows of the cars. The duty of defendant to its passengers was to have its bridges wide enough for the passage of its widest cars with safety to passengers who did not unreasonably expose themselves to danger. This bridge had been used safely for some years, how many does not appear. The mail bag had been caught at the same place and in the same manner regularly for years, and no injury or damage had ever been occasioned by the proximity of the bridge post. The attention of the postal agents who performed these duties seems never to have been attracted to any special danger at this place. There could be no injury without an exposure of the head, say from io to 14 inches beyond the outside line of the car, which was from four to six inches from the inside line. Ordinarily, it appears, the bag was caught and removed without any necessity of exposure of the head or body of the person who attended thereto. Had there been proof to the effect that the removal of the mail bag from the catcher, under the ordinary and usual conditions, necessitated the exposure of the head of the agent, it could be presumed that this condition or state of affairs was known to the defendant, and that it risked the consequences of injury to the in *454 testate, to whom it owed the care due to a passenger with this condition superadded. But, as we have seen, the ordinary rule was to the contrary.
It was made to appear, however, that the bag was occasionally jammed, or wedged, in the catcher, and when this happened the postal clerk in charge might have to expose ' his head somewhat beyond the outside line of the car, though it was not made to appear that the necessary exposure, under this exceptional condition, was ordinarily sufficient to bring the head of the person in contact with the post of the bridge. The contention of the counsel for appellant is thus stated on their brief: “The mail bag had got tightly wedged in the catcher, and Mr. Weaver was endeavoring to get it out; in doing this he had to use .both of his hands to pull the bag, and thus his head was toward the front of the train; while making this effort in this position, his head, by the lurch of the train (the track being curved at or near the bridge), or by the slipping of his hands or feet, got beyond the line of the car and was struck by the post of the bridge." Hence, it will be seen that something in addition to the wedged condition of the bag and the extra force required to remove it is necessary to account for an exposure sufficient to bring the head in contact with the bridge post, and this is claimed through the “lurch of the car,” or “the slipping of the hands or feet.” Without regard to this, however, it is sufficient to say that there is no proof that the bag was wedged in the catcher; on the contrary, the only evidence in the record is that it was not. The assumption that it was “ tightly wedged ” is not only a presumption or an inference from the mere fact of the killing, but is opposed to the direct evidence. The further inference is then drawn from this inference that the injury resulted from the bridge being too narrow, and that it was negligence in the defendant not to have anticipated the necessity and provided against it. Had there been actual proof that the bag was wedged in the catcher so as to require extraordinary exertion to remove it, thereby probably necessitating the exposure of the head of *455 the intestate, which, contributed to by the “ lurch of the car,” or the not unreasonable “ slipping of the feet or hands,” may have caused his death, the question of negligence should have been submitted to the jury. It would have been error to take it away from them. Unquestionably, a satisfactory conclusion may be reached through reasonable presumption or inference from established facts, as well as by direct evidence. But conjecture is not sufficient. Inferences must be from established facts, not from other inferences. U. S. v. Ross, 92 U. S., 281; Manning v. Ins. Co., 100 U. S., 693. In the first of these cases the court said: “ Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. No inference of fact or of law is reliably drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a: fact, the circumstances must be proved and not themselves presumed.” After quoting from Starkie and Best in support of the position, Mr. Justice Strong, who spoke for the court, said further: “A presumption which the jury is to make is not a circumstance in proof; and it is not, therefore, a legitimate foundation for a presumption. There is no open and visible connection between the fact out of which the first presumption arises, and the fact sought to be established by the dependent presumption.”
In this case, as we have seen, the wedging or jamming of the bag so as to require unusual force and exertion to remove it, is the indispensable foundation from which the negligence of the defendant is to be inferred. Without this the plaintiff had no case. The unfortunate occurrence through which the intestate lost his life must, therefore, be regarded as one of those accidents, not unusual, for which no legal responsibility can be traced. The plaintiff having failed in this respect, the court did not err in directing a verdict for the defendant; it became his duty so to do.

There being no error iu the record, the judgment must be affirmed; and it is so ordered, with costs to the appellee.