## Union Wire Mattress Company v. John Wiegref.

### Gen. No. 13,247.

1. VARIANCE—*when not fatal.* A variance between the allegations and the proof with respect to what the plaintiff was doing at the time of his injury is not fatal, as what the plaintiff was doing at such time is no part of the tort.

2. NEGLIGENCE—*what not evidence of.* That a thing is done in the usual or customary way is not evidence on the issue of negligence; the usual or customary way may be a negligent way.

3. NEGLIGENCE—*when refusal of instruction with respect to, error.* It is error to refuse an instruction which tells the jury that negligence cannot be inferred from the mere fact of the accident, where no other equivalent instruction was given.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed April 29, 1907. Rehearing denied May 9, 1907.

**Statement by the Court.** The declaration avers, in substance, that on or about the 16th day of October, 1903, the plaintiff was an employee of the defendant at its foundry on Carroll and Sacramento avenues, in Chicago, and was then and there ordered and directed by the defendant to work around and about a certain pile of pig-iron, and to remove and wheel away some of said pig-iron from off and out of said pile, and whilst the plaintiff was then and there rightfully, and with due care and diligence for his own safety and well being, proceeding with the performance of his said work and working and being around said pile of pig-iron, the defendant then and there carelessly, negligently, wrongfully, improperly and recklessly placed and piled up the said pile of pig-iron in an unsafe, improper

and .dangerous manner, and in such way as to permit the various pieces of pig-iron composing said pile to easily slip and fall from their places so that said pile might fall and tumble over, and without placing any reasonably adequate or sufficient supports or other safeguards to hinder or prevent the said pile from falling, thereby rendering said pile of pig-iron highly dangerous to the safety and well being of the plaintiff, who was rightfully working around the same, which danger the defendant knew, or by reasonable diligence might have known, and which was unknown to the plaintiff, by reason whereof the said pile of pig-iron fell and was precipitated with great force and violence down to, upon and over the body of the plaintiff, thereby greatly injuring him.

The defendant pleaded the general issue.   The jury found for the plaintiff and assessed his damages at the sum of $2,500; motions of defendant for a new trial and in arrest of judgment were overruled, and judgment was rendered on the verdict.

Appellee was employed by appellant as a common laborer, and had been in appellant's employ about a year and a half before the accident in question.   His work was the hauling coke and pig-iron on an iron wheelbarrow.   Appellant's building, where it conducted its business, was at the corner of Sacramento and Carroll avenues, and fronted· on Sacramento avenue, a north and south street.   There was a shed in the building about 12 feet square and 15 feet· in height, in which the accident in question happened.   When pig-iron was brought to the building by the railroad cars, it was thrown into this shed and lay in a heap on the floor, after which it was graded, and the different grades were piled.   The pig-iron was of various sizes and dimensions, and was from 16 to 18 inches in length.   The pieces of iron were broken in the shed, before being piled, except when they were not over 12 inches in length.   On the day next before the accident, which occurred October 16, 1903, a pile of pig-iron had been constructed by one Hrnst, who was in the employ of appellant.   The pile was constructed from north to south in the shed, by the direction of Thomas Bow-

man, Hrnst's foreman, and was about 5 feet high, and in width the length of the pieces of pig-iron of which it was composed, which, as heretofore stated, were from 16 to 18 inches in length. The south end of the pile was against the south wall of the shed, and there was a gang-way into which a door opened about 3 feet, 6 inches north of the north end of the pile. The floor of the shed was earth. There was no stake driven into the ground, or other barrier north of the pile, to prevent the pig-iron from falling at the north end of the pile, but pieces of pig-iron were placed cross-wise the direction of the pieces in the pile, and the evidence is that this was the usual and customary way of bracing such piles to prevent their falling. The pieces of pig-iron in the pile weighed some 20, some 25 or 30, and some as high as 100 pounds.

October 16, 1903, appellee was picking up pig-iron from a heap which lay on the floor of the shed close to the pile in question, and putting it on his iron wheelbarrow, which was situated just north of the pile, when some of the pieces of pig-iron fell on him from the north end of the pile and broke his leg and otherwise injured him. Hrnst, who was constructing another pile at the time of the accident, went to appellee's aid and took three pieces of iron off him. Hrnst, who constructed the pile, says that before the time of its construction the piles had been made from east to west, and, when so constructed, the evidence is that the east and west ends of the pile would be against the partitions of the shed. Charles Wiegref, son of plaintiff, who had been foreman for appellant for five years, but was not such at the time of the accident, testified that he didn't recollect having ever seen piles constructed running north and south in the shed, and that they should be constructed east and west where there was a wall to pile against, at each end, but that there might have been, but was not a prop at the north end of the pile in question.

Subine testified that appellee and he had piled iron east and west, and that he and appellee never piled along the partition where the pile in question was.

Thomas Bowman, the foreman, testified that he had worked for appellant more than twelve years and was foreman at the time of the accident; that appellee had been working under him about eighteen months, as a general laborer, carrying coke and pig-iron; that this was his work while under witness' supervision, and that appellee never piled pig-iron under his supervision.

HORTON, BROWN, RICHOLSON & MILLER, for appellant.

THEODORE G. CASE, for appellee; BENJAMIN D. MAGRUDER, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel, in their argument, contend: (1) There is a material variance between the declaration and the evidence. (2) If negligence is inferable from the evidence, it was the negligence of a fellow-servant. (3) The verdict must have been the result of surmise or conjecture, and therefore cannot stand. (4) The doctrine *res ipsa loquitur* is not applicable as between master and servant. (5) The court, in refusing defendant's offered instructions numbered 24 and 25, erred.

We will consider those propositions in the order stated, and will assume that all questions not argued are waived.

It is averred in the declaration as follows:

"The said plaintiff was then and there ordered and directed by the said defendant to work around and about a certain large and high pile of pig-iron, and to remove and wheel away some of the said pig-iron from off and out of said pile, and whilst the plaintiff, in obedience to said orders, was then and there rightfully and with due care and diligence about his own safety and well being, proceeding with the performance of his said work, and working and being around said pile of pig-iron, the said defendant had then and there carelessly, negligently, wrongfully, improperly and recklessly placed and piled up the said large pile of pig-iron in an unsafe, improper and dangerous manner, in

such way as to permit the various pieces of pig-iron compos-
ing said pile to easily slip and fall from their places, and
the said pile to thereby fall and tumble over, and without
placing any reasonably adequate or reasonably sufficient
supports or other safeguards to hinder or prevent the said
pile from falling, and thereby the said pile of pig-iron was
rendered highly dangerous to the safety and well being of
the plaintiff so rightfully working around the same, the dan-
gers whereof were well known to the defendant, or by rea-
sonable diligence could have been ascertained by it, but were
unknown to the said plaintiff, and by means of the premises
and by reason of the said improper piling and securing of
the said pile of pig-iron as aforesaid, the said pile of pig-
iron then and there suddenly fell and was precipitated with
great force and violence down to, upon and over the body of
the plaintiff, and he was thereby then and there greatly
hurt," etc.

There is no evidence that the appellee was ordered to "re-
move and wheel away some of the pig-iron from and off and
out of said pile," or that he was so engaged at the time of
the accident, and the evidence, including appellee's own
testimony, is, that he was taking pig-iron from the pile or
heap lying on the floor, and not from the pile which fell on
him. There was, therefore, a variance. Hrnst, the first
witness called by appellant, testified that appellee was en-
gaged in taking iron from a mixed pile on the ground, about
a foot and a half from the pile which fell, and not at all
from the pile which fell, and, at the close of Hrnst's testi-
mony, the appellant's attorney moved to strike out that part
of his testimony as to the place from which appellee was
taking iron, which motion the court disallowed. Appellant's
counsel contend the variance is material and fatal. In sup-
port of this contention counsel cite the following cases, with-
out stating any of them, except the first: City of Bloom-
ington v. Goodrich, 88 Ill., 558. The case was for injuries
occasioned by a defective sidewalk, and the averment in the
declaration was that the walk was out of repair, "to-wit, by
some of the planks being broken, so that large and deep
holes were in said walk, and the surface of the same be-

came, and was, very rough, irregular and uneven." The evidence failed to prove that any of the planks were broken, and showed that the only defect was that two of the planks had been removed from the walk. The variance was as to the cause of the accident, and the court held it fatal.

Pennsylvania Co. v. Conlan, 101 Ill., 93. This was a suit by an administratrix, for causing, by negligence, the death of her intestate. A witness identified a memorandum as one the deceased was using, in taking the numbers of the cars. Counsel objected to it on the ground that it was not alleged in the declaration that it was the duty of the deceased to take the numbers of the cars; that the allegation in each count of the declaration was, "that it became and was necessary for the deceased to pass over and upon said easternmost track, 'to give directions to others of his said co-servants, and to aid and assist in the switching, movement and operation of certain cars then being switched upon the westernmost track,'" citing a number of cases, among them the Goodrich case, *supra,* as sustaining the proposition that what the deceased was doing at the time was material, and must be proved as alleged. In respect to the objection, the court say: "Counsel are in error as to the effect of what is ruled in those cases. They announce, in substance, that if the pleader, though needlessly, describe *the tort, and the means adopted in effecting it,* with minuteness and particularity, and the proofs substantially vary from the statement, there will be a fatal variance,—and this was but following an old and well settled rule of common law pleading. 1 Chitty's Pleading (7th Am. ed.), 427. But what deceased was doing at the time he received the injury, is no part of the *tort,* or of the means adopted in effecting it." Ib. 102.

City of Rock Island v. Cuinely, 126 Ill., 408. In that case it was averred in the declaration, in respect to a sidewalk, that the city "wrongfully and negligently suffered the same to be and remain in bad and unsafe repair and condition, and divers of the planks wherewith the said sidewalk was laid to be and remain broken, loose and unfastened to the stringers thereof, by means whereof," etc. The evi-

dence does not show that any of the planks were broken, but did show that the walk was in bad and unsafe condition, and the planks thereof loose and unfastened, by reason of which the plaintiff was injured. *Held,* that the failure to prove that any of the planks was broken was immaterial, the averments of the declaration being broad enough to admit the proof made, and also being divisible. Ib. 411.

Ebserry v. C. C. Ry. Co., 164 Ill., 518, cited by counsel, is not the least in point.

In Wabash R. R. Co. v. Billings, 212 Ill., 36, it was averred in the declaration, that the plaintiff's buggy, in which he was riding across the defendant's track, was struck by defendant's car or train, and the plaintiff was then and there thrown out and injured. The evidence was that the plaintiff was not thrown from his buggy by the car at the instant of collision with it, or at all, but that, when the buggy was struck by the car, his horse ran away, and that the buggy, in passing over a curb 80 or 100 feet distant from the defendant's tracks, dropped 16 or 18 inches into a gutter, and the plaintiff was thrown out and injured. *Held,* that the averment was descriptive of the cause of action, and necessary to be proved, and that the variance was fatal, citing numerous cases.

In Ill. Cent. R'd Co. v. Chicago T. & T. Co., 79 Ill. App., 623, it was averred in every count of the declaration that the plaintiff was killed by the defendant's engine while walking on a certain public highway known as 113th street, which was across the defendant's tracks and right of way. The evidence was that 113th street did not cross the defendant's tracks or right of way, but, if continued, which it was not, it would so cross. *Held,* that the averment was material and the variance fatal.

In St. L. B. and Sub. Co. v. Hopkins, 100 Ill. App., 567, the principle announced is, that "if the pleader, though needlessly, describes the *tort,* and the means adopted in effecting it, with minuteness and particularity, and the proof varies substantially from the statement, there will be a fatal variance," citing numerous cases.

Union Wire Mattress Co. v. Wiegref.

None of the foregoing cases cited by appellant's counsel sustains their objection that there was a material variance in the present case, and the decision in Pennsylvania Co. v. Conlan, *supra,* is decisively against their objection.    In the present case the cause of action, the *tort* complained of, is the negligent piling of the iron in an unsafe, improper and dangerous manner, and in such way as to permit the pieces of iron of the pile to easily slip and fall, and without placing any reasonably adequate or sufficient supports or safeguards, etc.    The averment in the declaration as to what appellee was doing when the accident occurred is:    "The plaintiff was then and there rightfully, and with due care and diligence for his own safety and well being, proceeding with the performance of his said work, and working around said pile of pig-iron."    In Penn. Co. v. Conlan, the court expressly says:    "But what deceased was doing, at the time he received the injury, is no part of the *tort,* or of the means adopted in effecting it."    Ib. 102.    The contention as to variance cannot be sustained.

Appellant's counsel, in arguing their second proposition, that if there was any negligence it was that of appellee's fellow-servant, say:    "It appears from the record that the plaintiff and Hrnst had piled pig-iron together from time to time." There is not, in the abstract, the correctness of which appellant's counsel are not in a position to question, a particle of evidence that appellee and Hrnst ever piled pig-iron together.    Not only so, but the evidence is to the contrary. Appellee testified:    "I never worked with Hrnst piling iron," and Hrnst, speaking of the pile which fell, testified, "Mr. Wiegref had nothing to do with the erection of this pile."

Counsel further say, "That during the piling, by the witness Hrnst, of the pile which fell, the plaintiff was working within two or three feet of him, hauling iron from the promiscuous pile lying on the floor of the pig-iron room." Hrnst was not working at the pile which fell, at the time of the accident.    It appears from his testimony and that of the foreman Bowman, called by appellant, that the pile which

fell was constructed the day next before the day of the accident, and there is no evidence showing where appellee was on that day. Mr. Bowman testified that the pile which fell had been standing there at least a day and a half, and was five feet high, and the second pile on which Mr. Hrnst was working was about half that height. Counsel lay stress on the evidence that the manner in which the pile was constructed was the usual and customary manner of piling pig-iron, evidently relying on this as tending to prove that there was no negligence in the piling. That a thing is done in the usual or customary way is not evidence on the issue of negligence. The usual and customary way may be a negligent way. In C., R. I. & P. Ry. Co. v. Clark, 108 Ill., 113, 118, the court say: "It is next urged that the trial court erred in admitting evidence as to the usual mode of coupling and uncoupling cars at that switch. One of the issues being tried was, whether deceased performed his duty with such negligence as to preclude a recovery. He was bound to use care, or no recovery can be had, and what others did or were in the habit of doing did not tend to prove that issue. Such a course may have been careless, or even reckless, and if so, it did not justify him in omitting the observance of care. We therefore think that such evidence did not tend to prove care on the part of deceased, and the court erred in its admission."

The following cases are to the same effect: McCormick M. Co. v. Burandt, 136 Ill., 170; Ry. Co. v. Walter, 147 ib., 60; Beidler v. Branshaw, 200 ib., 425, 429; Hinckley v. Barnstable, 109 Mass., 126; Hill v. P. & R. R. R. Co., 55 Maine, 438, 444–5; Hibler v. McCartney, 31 Ala., 501; Sewall's Falls Bridge v. Fisk, 23 N. H., 171; Temperance Hall Ass'n v. Giles, 33 N. J. L., 260; Hamilton v. Des Moines Valley R'd Co., 36 Ia., 31; Lawrence v. Hurdson, 12 Heisk. (60 Tenn.), 671; Crocker v. Schureman, 7 Mo. App., 358; Cleveland v. N. J. Steamboat Co., 5 Hun, 523.

The question whether there was any negligence as claimed by appellee, and, if so, whether it was the negligence of a fellow-servant of appellee, was submitted to the jury by

instruction 14 given at appellant's request, and, after carefully considering the evidence, we are satisfied with the finding necessarily included in the verdict, that the negligence was not that of a fellow-servant of appellee.

We cannot sustain the third proposition of counsel that the verdict is based on surmise or conjecture, and therefore cannot stand. The evidence for appellee shows that he had had only two years and a half experience in any foundry prior to the accident; that his duty was that of a common laborer, engaged by appellant to haul coke and pig-iron from the shed in an iron wheelbarrow, and Thomas Bowman, who had worked for appellant twelve and a half years, and was foreman at the time of the accident, testified that the appellee had been working under him about a year and a half as a general laborer, carrying coke and pig-iron from the shed to the cupola, which was evidently outside the shed, and also testified that appellee had never piled any pig-iron under his supervision. In the performance of appellee's duty, hauling coke and iron from the shed to the cupola, he had to pass into and out of the shed by the passage at the north end of the pile which fell. It is true that appellee, by his own testimony, shows that he had piled iron in the shed from east to west, in which case the pile was supported at both ends by the walls of the shed, but the evidence that he had never piled or seen the iron piled from north to south was ample to warrant the jury in finding that he had never so piled it, or seen it so piled.

The pieces of iron in the pile which fell were short, only from 16 to 18 inches in length, and varied greatly in weight. Hrnst testified that some of them weighed 20, some 25, some 30, some 50 and some 100 pounds. The evidence is that three of them, in falling on appellee, broke his leg and otherwise injured him. This evidence is uncontradicted. The pile was about 5 feet in height and 8 feet in length, and at its north end there was no stake or barrier to prevent it from falling into the passage north of it. The pieces of pig-iron in the pile, differing so much in weight as they did, were necessarily of different lateral dimensions,

and it was, as we think, a question for the jury whether the use of cross-pieces, at the north end of the pile, differing so much in thickness and only 16 or 18 inches long, to prevent the pile from falling, was or not negligence. Charles Wiegref testified that he was foreman for appellant five years, and that he could not recollect of ever having seen pig-iron piled·north and south in the shed. Speaking of bracing by cross-pieces, he testified: "If they are not braced right in that cross pile they will fall down; but if they are braced right, they will not fall." The court: "What constitutes right bracing for them?" A. "It is just in little and small pieces. If you put large ones and small ones, it won't make a good prop. If you get all one size pig-iron on the one side, you will have a good prop." Q. "If you get uniform size and uniform length?" A. "Yes, sir."

It is not necessary, in this place, to discuss the question whether the doctrine *res ipsa loquitur* applies.

It is contended that the court erred_in refusing to give the 24th and 25th instructions asked by appellant, which are as follows:

24th. "You are further instructed, that if you believe from the evidence, that the pig-iron in question was piled in the usual, ordinary and customary manner of piling pig-iron, under like conditions, then your verdict must be for the defendant."

25th. "You are further instructed that the mere fact that said pile of iron slipped or fell is not any evidence, in itself, of careless, negligent or reckless piling of said pig-iron."

Instruction 24 was properly refused, for reasons heretofore stated. Instruction 25 is equivalent to an instruction that negligence cannot be inferred from the mere fact of the accident. It is not included in any instruction given, and is a material instruction, in view of the evidence in the cause, and the refusal to give it was error. "The mere fact of injury or happening of an accident, does not raise a pre-

sumption of negligence." 1 Bailey's Personal Injuries, section 1597, and cases cited.

Appellant's counsel cite McCormick Harvesting Machine Co. v. Zakzewski, 220 Ill., 522, in support of their client's defense; but we think this case distinguishable from that, by reason of material differences in the facts of the two cases.

We feel compelled to reverse the judgment, because of the refusal of the court to give instruction 25 asked by appellant.

A motion of appellee to strike from appellant's reply brief certain parts thereof was reserved till the hearing. It will be overruled and the judgment will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*