THE PENNSYLVANIA COMPANY

*v.*

KATE CONLAN.

*Filed at Ottawa November 10, 1881.*

1. EVIDENCE—NEGLIGENCE—*evidence to show rate of speed and control of train.* Testimony showing how far a train of cars ran after striking a person, is competent evidence in a suit against the railroad company to recover damages for causing the death of the person struck, as tending to show the train was running at a greater speed than allowed by ordinance of the city in which the accident occurred, and also that the train was not under proper control.

2. SAME—*employment of party injured is material.* In a suit against a railroad company to recover for the killing of a person through negligence, while engaged in his duty as a switchman, the nature of his employment at the time of the injury is material on the question whether he was exercising due care.

3. SAME—*limiting question to particular train.* In a suit against a railroad company to recover damages for striking a person by a train of cars through negligence, a witness had been speaking of the train that struck the deceased. He was then asked, "state to the jury, in your opinion, how fast the train was going," which was claimed to be objectionable, as not being limited in time or to the particular train: *Held,* that the objection was not tenable.

4. SAME—*opinions of persons as to matters not scientific, etc.* Where a copy of the rules of a railway company, showing what was required of switchmen and other servants, was admitted in evidence, and where what work the deceased switchman was required to do, as well as the means at his hand with which it could be accomplished, was distinctly shown, and where the main and side-tracks, and their distance from each other, and the street crossings and yards, with all the other facts deemed necessary, were given in evidence, it was *held* no error to refuse the testimony of other switchmen, to show that in their opinion it was not necessary for the deceased to have been where he was when he received the injury, or to have passed along the track, and that there was space enough to properly perform his duties without going upon such track, etc., as the jury were as competent, from the facts shown, as the witnesses, to form an opinion on the questions proposed.

5. As to matters which do not so far partake of the nature of a science as to require a course of previous habit or study in order to an attainment of a knowledge of them, the opinions of witnesses, though experts, are not admissible.

6. NEGLIGENCE—*is a question of fact.* The question of negligence is not one of law, but of fact, and must be proved like any other. Hence an instruction is properly refused which tells the jury, as a matter of law, that certain facts *per se* constitute negligence. By this it is not meant that the definition of negligence is one of fact, to be determined by the jury.

7. Expressions may be found under the old practice, when this court was required to review questions of fact as well as of law, that certain facts were evidence of negligence. But such expressions are mere argument—the expression of a conclusion of fact, and not of law.

8. PLEADING AND EVIDENCE—*variance as to immaterial allegation not fatal.* As a party is not bound to prove matters which are merely surplusage, if the proof does not correspond with such matters alleged the variance is immaterial.

9. SAME—*no variance to prove more than is alleged.* In an action against a railroad company to recover for an injury by striking the deceased

with a moving train of cars, the declaration alleged that the deceased, at the time, was engaged in his duty in passing over and upon a certain track, "to give directions to others of his co-servants, and to aid in the switching, movement and operation of certain cars being switched upon" such track. There was evidence tending to prove this allegation: *Held,* that proof that deceased had another duty to perform, as, taking the numbers of the cars, in a memorandum book, constituted no variance, as what the deceased was doing at the time was no part of the *tort* complained of, or of the means adopted in effecting it.

10.　In such case the *gist* of the action is the defendant's negligence, as alleged, and the motives of the deceased in being upon the track, or why he was there, are wholly immaterial, it being sufficient that he was lawfully there. Any allegation showing why the deceased, as switchman, was upon the track, except that he was rightfully there, is surplusage.

11.　PRACTICE—*excluding all plaintiff's evidence.** A motion to exclude all of the plaintiff's evidence at its close, being in the nature of a demurrer to the evidence, is properly refused if there is any evidence tending to prove the plaintiff's case.

12.　SAME—*remarks of judge.†* The court, on overruling a defendant's motion to exclude all the plaintiff's evidence, as not making a case, remarked that he would not give his reason for so deciding, for the counsel did not want him to sum up the testimony and tell the jury why he overruled the motion: *Held,* that there was no error in such remarks.

13.　INSTRUCTIONS—*province of court and of the jury.* It is the office of the judge to instruct the jury in points of law, and of the jury to decide on matters of fact.

---

*DEMURRER TO EVIDENCE. As to the proper office of a demurrer to evidence, what it should contain, and what it admits. *Crowe* v. *The People,* 92 Ill. 231; *Valtez* v. *Ohio and Mississippi Ry. Co.* 85 id. 500; *Phillips* v. *Dickerson,* id. 11.

On the general subject of an involuntary non-suit, or excluding all the plaintiff's evidence from the jury, or instructing the jury to find for the plaintiff, or for the defendant. *Holmes* v. *Chicago and Alton R. R. Co.* 94 Ill. 440, and cases cited in note; *Caveny* v. *Weiller,* 90 id. 158; *Hubner* v. *Feige,* id. 209, and note; *Crowley* v. *Crowley,* 80 id. 469; *Smith* v. *Gillett,* 50 id. 291.

†PRACTICE—REMARKS OF THE JUDGE IN MAKING HIS RULINGS—*whether ground of error. Ashbaugh* v. *Murphy et al.* 90 Ill. 182; *Beasley* v. *The People,* 89 id. 571; *Skelly* v. *Boland,* 78 id. 438; *Andreas et al.* v. *Ketcham,* 77 id. 377; *Farnham* v. *Farnham,* 73 id. 498.

As to improper remarks of counsel. *Hennies et al.* v. *Vogel,* 87 Ill. 242; *Kepperly* v. *Ramsden,* 83 id. 354; *Wilson* v. *The People,* 94 id. 299.

14. SAME—*singling out a single fact.* An instruction is properly refused which singles out an isolated fact, saying that it alone does not constitute willful or wanton negligence, especially when the question does not hinge on such fact alone, and the instruction does not assume to be predicated upon the evidence.

15. SAME—*deciding upon a question of fact.* An instruction telling the jury, as a matter of law, that an ordinary switchman's lantern, giving forth a white light, is a sufficient compliance with a city ordinance requiring "a brilliant and conspicuous light on the forward end of each locomotive," etc., is properly refused, as taking from the jury an important fact which it is their province to find from the evidence.

16. WITNESS—*credibility.* To impeach a witness it must be shown that he willfully and knowingly testified falsely to a material fact, and even then the jury are not compelled to disbelieve him as to other matters. They may do so, but should be left to exercise their judgment in that regard.

17. PRACTICE IN SUPREME COURT—*errors not urged in lower courts.* Where no objection is made that the damages are excessive, in the trial court in the motion for a new trial, nor in the Appellate Court, that question is not before this court.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action on the case, brought by appellee against appellant, in the Superior Court of Cook county, in consequence of the negligence of appellant resulting in the death of her intestate.

The declaration contains four counts: In the first, the negligent act is alleged to have consisted in wrongfully, unlawfully and negligently driving a locomotive engine and train of cars, within the limits of the city of Chicago, without having a brilliant and conspicuous light on the forward end of said train, as required by an ordinance of said city. In the second, the negligent act is alleged to have consisted in wrongfully, negligently, etc., driving the said locomotive engine and train at a greater rate of speed, within the limits of the city of Chicago, than six miles per hour, contrary to an ordinance of said city. In the third, the negligent act is

alleged to have consisted in driving the said locomotive engine and train of cars at a high rate of speed, neglecting to ring a bell on the said locomotive, contrary to law and the ordinance of said city. In the fourth, the negligent act is alleged to have consisted in carelessly, negligently, etc., driving and managing the said locomotive engine and train, etc.

It was proved on the trial, that at the time the intestate was injured, appellant and the Chicago and Alton Railroad Company operated certain tracks in the city of Chicago, in common. The intestate was a switchman in the employ of the Chicago and Alton Railroad Company, and about half past seven o'clock on the evening of February 13, 1880, and while the intestate, together with another switchman and an engineer and fireman, were in charge of a switch-engine, gathering up empty cars from off the switches, the intestate was struck by one of appellant's freight trains, backing up along one of its main tracks, and thereby received the injuries from which he subsequently died.

Ordinances of the city of Chicago were also read in evidence upon the trial, providing that "every locomotive engine, railroad car or train of cars running in the night time on any railroad track in said city, shall have and keep, while so running, a brilliant and conspicuous light on the forward end of such locomotive engine, car, or train of cars;" also, that "no locomotive engine, railroad passenger car or freight car shall be driven, propelled or run upon or along any railroad track within said city at a greater rate of speed than six miles per hour;" and also, that the bell "of each locomotive engine shall be rung continuously while running within said city." The only light on the advancing or forward end of the train, was a common brakeman's lantern.

The other facts, so far as they may be material to an understanding of this case, will sufficiently appear in the opinion.

The jury found the appellant guilty, and assessed appellee's damages at $5000. Motion for a new trial was made, and overruled by the Superior Court, and judgment rendered upon the verdict, and thereupon appellant appealed to the Appellate Court for the First District, and that court, on final hearing, affirmed the judgment of the Superior Court. The present appeal is prosecuted from that judgment.

The errors assigned are :

*First*—The Appellate Court erred in not sustaining the points, and each of the points, assigned for errror on appeal from said Superior Court.

*Second*—The said Appellate Court erred in not reversing the judgment of said Superior Court.

*Third*—The said Appellate Court erred in affirming the judgment of the said Superior Court.

Messrs. WILLARD & DRIGGS, for the appellant:

What the deceased was doing at the time of the alleged injury was material, and must be proved as alleged, although set forth with unnecessary particularity. *City of Bloomington* v. *Goodrich*, 88 Ill. 558; *Goodhue* v. *People*, 94 id. 37; *Chicago and Alton R. R. Co.* v. *Michie*, 83 id. 427; *Toledo, Wabash and Western R. R. Co.* v. *Beggs*, 85 id. 80.

The court erred in refusing to allow the witnesses Morrisey and Rose, experienced switchmen, to testify as to their opinions, etc. *Linn* v. *Sigsbee*, 67 Ill. 75; *Carter* v. *Bœhm*, 1 Smith's Leading Cases, 286; 1 Redfield on Railways, 579; *Beckwith* v. *Sydebotham*, 1 Camp. 116; *Belfontain and Indiana R. R. Co.* v. *Bailey*, 11 Ohio St. 333; *Cincinnati and Zanesville R. R. Co.* v. *Smith*, 22 id. 227; *Transportation Line* v. *Hope*, 5 Otto, 297; 1 Wharton on Evidence, sec. 444.

Persons not experts may give their opinions as to the value of property. *Butler* v. *Wehrling*, 15 Ill. 488; *McKee* v. *Nelson*, 4 Cow. 350; *Steamboat Clipper* v. *Logan*, 18 Ohio, 396.

The court erred in overruling appellant's motion to exclude appellee's testimony. Such motions are in the nature of a demurrer to evidence, and should be sustained when the plaintiff's proof does not make out a case. *Fent et al.* v. *Toledo, Peoria and Warsaw R. R. Co.* 59 Ill. 349; *Poleman* v. *Johnson,* 84 id. 269; *Phillips* v. *Dickerson,* 85 id. 11.

The deceased could have stood between the two main tracks and performed the service in which he was engaged. He did not do so, but, on the contrary, placed himself in the most dangerous position possible under the circumstances, and the conclusion is irresistible that the proximate cause of his death was his own want of care. *Chicago, Burlington and Quincy R. R. Co.* v. *Hazard,* 26 Ill. 373; *Chicago and Northwestern Ry. Co.* v. *Sweeney,* 52 id. 325; *Chicago and Northwestern Ry. Co.* v. *Donohue,* 75 id. 255; *Chicago and Northwestern Ry. Co.* v. *Scates,* 90 id. 586; *Lake Shore and Michigan Southern Ry. Co.* v. *Clemens,* 5 Bradw. 77.

That defendant's instructions numbers one and two were proper and correct, counsel cited *Bartlett et al.* v. *Board of Education, etc.* 59 Ill. 364; *Kendall* v. *Brown,* 74 id. 232; *Clevinger* v. *Dunaway,* 84 id. 367.

That instruction number seven should have been given, see *Illinois Central R. R. Co.* v. *Hetherington,* 83 Ill. 510; *Chicago, Burlington and Quincy R. R. Co.* v. *Harwood,* 90 id. 425. The court erred in giving the instruction on its own motion.

Messrs. MONROE & LEDDY, for the appellee:

The court did allow appellant to prove what the duties of Conlan were, and how they were usually performed, as well as all the facts relating to the case, but not what Conlan might have done.

On the question whether the plaintiff used due care, or acted imprudently, it is error to admit in evidence the opinions of witnesses engaged in the same business, when no question

of science, trade or skill is involved. *Hopkins* v. *Indianapolis and St. Louis R. R. Co.* 78 Ill. 32; *City of Chicago* v. *McGiven,* id. 347; *Chicago and Alton R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 67 id. 142.

The court did allow appellee and appellant both to show fully the duties of Conlan, the situation of the ground, tracks, switches, trains, and the circumstances and conditions under which he performed those duties, and left it for the jury to say whether or not Conlan was negligent.

The first and second instructions were properly refused, as they took the question of negligence away from the jury, and left it with the court to say that the deceased, under a certain state of facts, was guilty of negligence. The question of the negligence of the deceased was embodied in the instructions given by the court, and fairly submitted to the jury. The case of *Bartlett* v. *Board of Education, etc.* 59 Ill. 364, cited by appellant, has no application.

Instructions numbers seven and eight, refused, were properly refused, the first leaving out the comparative negligence, and also being an abstract proposition of law, and the eighth infringing on the province of the jury.

The twelfth instruction was properly refused, as it was faulty in using the word "should" instead of the word "may," and omitting other words, "willfully and knowingly." *Reynolds* v. *Greenbaum,* 80 Ill. 416; *Pollard* v. *The People,* 69 id. 148.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Numerous objections are urged in argument against the rulings below, and they shall be noticed in the order in which they are discussed in appellant's brief.

*First*—Certain evidence, admitted over appellant's objections, it is insisted, was erroneously admitted.

1. A witness testified how far appellant's train ran after Conlan was struck. This, we think, was competent. An

ordinance of the city limited the speed of trains to six miles an hour.   It was not indispensable, in proving a violation of this ordinance, that the proof should show the speed was ascertained by actual comparison and measurement with a timepiece.   That, of course, would be the very best kind of evidence, but from the nature of things it is absolutely necessary that a lower grade of evidence should be admissible. This evidence would tend to prove the speed of the train, and also whether it was under proper control, and was, in our opinion, legitimate, under the issues.

2.   Again, the same witness gave answer, fixing the speed of the train, to this interrogatory:  "State to the jury, in your opinion, how fast the train was going."   The only respect wherein it is claimed this is objectionable is, that it is not limited in time.   The objection results from a misapprehension.   The witness had been previously speaking of the train that struck Conlan.   The question is limited to *that* train, and, we think, must clearly have been so understood by the witness and the jury, and so was free of the objection.

3.   The same witness also identified a certain memorandum book as the one Conlan was using in taking the numbers of the cars at the time he was injured.   The objection urged against this evidence is, it is not alleged in the declaration that the taking of the numbers of cars was the duty of Conlan, as a switchman, and counsel say:  "The allegation in each of the counts is, that it became, and was, necessary for the deceased to pass over and upon said easternmost track, 'to give directions to others of his said co-servants, and to aid and assist in the switching, movement and operation of certain cars then being switched upon the westernmost track.'"   And they cite *City of Bloomington* v. *Goodrich,* 88 Ill. 558, *Goodhue* v. *People,* 94 id. 37, *Chicago and Alton R. R. Co.* v. *Michie, Admx.* 83 id. 427, *Toledo, Wabash and Western R. R. Co.* v. *Beggs,* 85 id. 80, as sustaining the proposi-

tion that what the deceased was doing at the time was material, and must be proved, as alleged. Counsel are in error as to the effect of what is ruled in those cases. They announce, in substance, that if the pleader, though needlessly, describe *the tort, and the means adopted in effecting it,* with minuteness and particularity, and the proofs substantially vary from the statement, there will be a fatal variance,—and this was but following an old and well settled rule of common law pleading. 1 Chitty's Pleading, (7th Am. ed.) 427. But what deceased was doing at the time he received the injury, is no part of the *tort,* or of the means adopted in effecting it. And although it is alleged, in the language quoted above, there is proof tending to sustain this allegation,—that is to say, that it became, and was, necessary for the deceased to pass over and upon said easternmost track, to give directions to others of his said co-servants, and to aid and assist in the switching, movement and operation of certain cars then being switched, etc. It would be difficult to determine, upon any well established principle of law, that the fact that the deceased had an additional motive for being on the track, viz : taking the numbers of cars, would constitute a variance between the proofs and allegations.

There is, however, in our opinion, a still more complete and satisfactory answer to the objection. "A party is not bound to prove matters which are merely surplusage. If the proof does not correspond with such matters, the variance is not material." *West* v. *Cole,* 12 Mod. 127 ; *Gibbs* v. *Cannon,* 9 S. & R. 203 ; *Little* v. *Blint,* 16 Pick. 365 ; 3 Robinson's Practice, 562 ; 1 Chitty's Pleading, (7th Am. ed.) 262, 263.

It is distinctly averred in the declaration that the deceased was a switchman in the employ of the Chicago and Alton Railroad Company, and that in the discharge of his duties as such it became, and was, necessary to pass upon and over the track of the appellant, and that while he, in the discharge of such duty, with due care and caution, and without negli-

gence on his part, was so passing over and along said track, etc., appellant wrongfully, negligently, etc., drove its engine and train, without having a sufficient headlight, as prescribed by ordinance of the city, etc., and thereby struck and ran against and upon the deceased, thereby wounding him, etc.

The *gist* of the action is appellant's negligence. The motives of the deceased in being upon the track are wholly immaterial, it being sufficient that he was lawfully there. Obviously no issue could be formed on the question of deceased's motives. Hence, all that is alleged in regard to why the deceased was upon the track might have been stricken out without affecting the sufficiency of the declaration. It was what appellant did, not why deceased was there, that was important to be inquired into. The allegation was entirely surplusage, and might have been disregarded, in whole or in part, without affecting the merits of the case, and it is therefore unimportant whether it was proved or not.

*Second*—Evidence was offered by appellant, which, on objection by appellee, was rejected by the court, consisting of the testimony of several switchmen, to show that in their opinion it was not necessary to be where deceased was when he received his fatal injury; that in order to perform the duties enumerated in the declaration it was not necessary for the deceased to pass along upon the east main track; that there was space enough to properly perform such duties without going on said track, and that there was no rule of the Chicago and Alton Railroad Company requiring the switchman performing the duties before indicated to stand on the main track. The form of the proposition is repeated under varied phraseology, but it all amounts simply to a proposition to establish that the deceased did not exercise due care, in the opinion of the witnesses, or to give the opinions of other switchmen on that subject. What the rules of the Chicago and Alton Railroad Company required of switchmen

and other servants was proven by a copy of those rules; and what work the deceased had to do was distinctly pointed out, as well as the means at his hand with which it could be accomplished. The main tracks and side-tracks, distances from each other, street crossings, and yards, were fully described, and all the other facts deemed necessary by the respective counsel to place the case fully and fairly before the jury, were given in evidence. Under these circumstances we can not perceive why every man on the jury was not as competent to give his opinion on the questions proposed to be proved, as a professional switchman. Whether to be on a track is dangerous, whether there is room to pass by the side of a train without getting on an adjoining track, how far tracks are from each other, how far cars project over the sides of tracks, how far, at any given point, it is necessary for a person to stand from a track in order to see the front or rear of trains, and all kindred questions, are, most obviously, as easily ascertained and testified to by one man as by another of equal intelligence, without regard to experience in railroading.

In *Linn* v. *Sigsbee*, 67 Ill. 75, referred to by counsel for appellant, this court held, that in an action for the breach of a contract made by one physician with another not to practice medicine within a given territory, other physicians could not be allowed to give their opinions as experts as to the amount of damages resulting to the plaintiff by the resumption of practice by the defendant. The court, among other things, said: "If they" (the physicians) "did not have a knowledge of the facts, the sickness, and the practice performed by the defendant, an opinion was a mere guess; if they had such knowledge from a detailed statement of the facts, the jury could have assessed the damages;" and this would seem to have equal pertinency here. If the switchmen did not know all the facts essential to an intelligent opinion, any opinion they might express would be a mere guess. If they

did know the facts, they could detail them to the jury, so that the jury could form their own opinion.

The quotation made in that case from *Carter* v. *Bœhm*, 1 Smith's Leading Cases, 286, we do not think applicable here, because the subject matter of inquiry is not such that only persons of skill and experience in it are capable of forming a correct judgment upon it,—or, in other words, it does not so far partake of the nature of a science as to require a course of previous habit or study in order to the attainment of a knowledge of it.   And this precise question has been thus decided by us in *Hopkins* v. *Ind. and St. L. R. R. Co.* 78 Ill. 32.   To a like purport are also *City of Chicago* v. *McGiven*, 78 Ill. 347, and *Chicago and Alton R. R. Co. et al.* v. *Springfield and Northwestern R. R. Co.* 67 Ill. 142.   Questions of value, as in *Butler* v. *Mehrling*, 15 Ill. 488, which are compounded of fact and opinion, are not analogous.

The questions whether deceased had been in employment long enough to know about this train, and whether his employment had been such that he saw or might have seen this train every evening, which were asked, and their answers disallowed by the court, belong to the same class as those we have commented upon, and require no further remarks.  See Wharton on Evidence, vol. 1, sec. 436.

*Third*—Appellant's counsel, at the close of appellee's testimony, moved to exclude it from the jury, but the court refused to allow the motion.

Counsel insist that such motions are in the nature of demurrers to evidence, and should be sustained where the plaintiff's proof does not make out a case, and they cite *Fent et al.* v. *Toledo, Peoria and Warsaw Ry. Co.* 59 Ill. 349, *Poleman* v. *Johnson*, 84 id. 269, *Phillips* v. *Dickerson*, 85 id. 11, sustaining the proposition.   Counsel are mistaken in the limitations of the rule recognized by these cases.   The motion, it is true, is in the nature of a demurrer to evidence; but, as a demurrer to evidence, it was never heard

that a judge could take the question of fact from the jury, and interpose his own judgment as to the weight and preponderance of evidence in the place of theirs. The rule, on the contrary, is, as is shown by these cases, the demurrer admits not only all that the plaintiff's testimony has proved, but all that it tends to prove,—and hence, if there is evidence tending to prove the issues in favor of the plaintiff, the judgment must be in his favor. There was evidence here tending to prove the issues in favor of appellee, and the court very properly, therefore, overruled the motion.

*Fourth*—The court refused certain instructions asked by appellant, of which the first, second, seventh, eighth, twelfth, thirteenth and fourteenth are specifically pointed out in argument as having been erroneously refused. The others were practically abandoned on argument, and no notice, therefore, need be taken of them.

As to the first and second, it is enough to say the court properly refused them, because they assumed to tell the jury, as matters of law, that certain facts *per se* constituted negligence on the part of the deceased. In *Great Western R. R. Co.* v. *Haworth et al.* 39 Ill. 353, this court ruled, "negligence is not a legal question, but is one of fact, and must be proved like any other," and this was followed in *Chicago and Alton R. R. Co.* v. *Pennell,* 94 Ill. 448. Of course this does not mean that the definition of negligence is one of fact, and that the jury shall be left to their own fancies to determine what, in each case, shall be the measure to which the proof shall be applied in determining whether there is negligence, but, simply, the general rule being declared as matter of law, the jury must determine whether such facts have been proved as bring the case within that general rule. Thus, in the *Haworth case, supra,* negligence was defined to be "the opposite of care and prudence—the omission to use the means reasonably necessary to avoid injury to others," and it was left to the jury to determine, from all the evidence,

whether the party charged with the negligent act was thus guilty—that is, whether the party had failed to exercise care and prudence, or, in other words, omitted to use the means reasonably necessary to avoid injury to the other party. It is sometimes said that negligence is a mingled question of law and fact. Shearman & Redfield on Negligence, (2d ed.) sec. 11. If by this it is meant it is a question of law to determine the rule—that is, the definition of negligence, and a question of fact to determine, from the evidence, whether the particular case falls within the rule or definition,—it is entirely in harmony with the rulings of this court in the cases *supra*.

Expressions may frequently be found in opinions of this court, where, under our old Practice act, we were required to review questions of fact as well as of law, that such and such facts were evidence of negligence. But this is always mere argument—the expression of a conclusion of fact, not of law,—from certain other admitted or proved facts. In such cases, and as to such questions, the court is exercising precisely the same function as does a jury in the trial court, only, unlike the jury, giving its reasons for its conclusions ; and it is this blending, in such cases, of the distinct and independent functions exercised by court and jury at *nisi prius,* that has occasionally misled counsel, and induced the belief that the court has declared the result of purely controverted questions of fact as conclusions of law. "It is the office of the judge to instruct the jury in points of law,—of the jury to decide on matters of fact." Broom's Maxims, (4th ed.) 103, *77.

The seventh instruction is faulty in singling out a single fact and saying that it, alone, does not constitute willful or wanton negligence. No one, perhaps, claims that it does. But the case did not hinge on that isolated fact, and to single it out and give it this undue prominence could have but tended to mislead the jury. Besides, it does not assume

to be predicated upon the evidence, and if it did, it would be but the expression of an opinion of fact, and not of law. Whether such running would constitute willful or wanton negligence, would depend entirely upon the attending circumstances, all of which should be taken into consideration in order to give an intelligent answer to a question of that character.

The eighth instruction told the jury, as matter of law, in substance, that an ordinary switchman's lantern, giving forth a white light, was a sufficient compliance with the city ordinance requiring "a brilliant and conspicuous light on the forward end of each locomotive," etc. The instruction does not purport to give a legal construction of the ordinance. It simply takes from the jury a question of fact. The law said there "must be a brilliant and conspicuous light," etc., no matter how produced, and it is merely a question of fact whether there was such a light. The court, therefore, properly refused the instruction.

The twelfth instruction was properly refused. The jury are not compelled to disbelieve a witness merely because his testimony as to some material point in the case may not be true. To impeach him it must be shown that he willfully and knowingly testified falsely, and even then the jury are not compelled to disbelieve him as to other matters. They may do so, but should exercise their judgment in that regard. *Reynolds* v. *Greenbaum,* 80 Ill. 416 ; *Pollard* v. *The People,* 69 id. 148.

The substance of the thirteenth instruction is clearly and distinctly embodied in the instructions given by the court, and so its refusal could have done no harm.

The fourteenth instruction was also properly refused. The nature of the employment of deceased at the time he was injured, was material on the question of whether he was exercising due care, and the purport of the instruction was to assert the contrary. The court gave to the jury a charge,

of its own motion, embodying with substantial accuracy all the principles of the law we think essential to a full comprehension of their duties, by the jury.

The objections urged are, in our opinion, hypercritical, for the most part, and all untenable. They are not of sufficient practical importance, in our opinion, to justify stating and answering them *seriatim* and at length, and we shall therefore forbear further comment.

An objection is made to a remark of the judge in overruling appellant's motion to exclude appellee's testimony, to the effect that he would not give his reasons for deciding as he did, for the counsel did not want him to sum up the testimony and tell the jury why he overruled the motion. It is impossible to conceive that this improperly affected the jury. The motion was overruled, and from this the jury must have inferred it was not well founded, and we are unable to perceive that anything more prejudicial to appellant could have been inferred from these remarks of the judge. We regard the objection as frivolous.

There seems to have been an objection urged in the Superior Court in regard to the competency of a juryman, but since it is not pressed in argument here, we infer it has been abandoned, and, we think, very properly so, as it was plainly destitute of merit.

The question of whether the damages are to be regarded as excessive, is not before us, since that objection was not raised in the motion for a new trial in the Superior Court, nor assigned for error in the Appellate Court. *Emory* v. *Addis*, 71 Ill. 273; *Thayer* v. *Peck*, 93 id. 357; *Diversey* v. *Johnson, Admx.* id. 547; *Page et al.* v. *People ex rel.* 99 id. 418; *Litchtenstadt* v. *Rose*, 98 id. 643.

The judgment is affirmed.

*Judgment affirmed.*