## Robert Henderson v. Chicago, B. & Q. R. R. Co.

1. PRACTICE—*Effect of Motion to Instruct the Jury to Find for Defendant.*—A motion to instruct the jury to find for the defendant is in the nature of a demurrer, and admits not only all the evidence proves, but all it tends to prove.

2. EVIDENCE—*Of the Condition of a Railroad Track After an Accident.*—It is often impracticable to adduce evidence of the condition of a railroad track at the precise moment an accident occurred, and where a defective track is the cause of a casualty it is proper to prove such a state of facts, shortly before or after its occurrence as will induce a reasonable presumption that the condition was the same at the time of the accident.

Trespass on the Case, for personal injuries. Error to the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed January 6, 1898.

EDWARD H. MORRIS, attorney for plaintiff in error; C. S. BEATTIE, of counsel.

"Negligence is ordinarily a question of fact. Where the evidence on conflicting facts is conflicting, or where, on undisputed facts, fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. The fact to be determined is the existence or nonexistence of negligence. With all the facts considered, if there is a reasonable choice of conclusions differing thereon, then it is a question for the jury." Wabash Ry. Co. v. Brown, 152 Ill. 488; Chicago & N. W. Ry. v. Hansen, 166 Ill. 629.

"If facts and circumstances are proved which lead the mind with certainty to the conclusion that other facts and circumstances are true, those facts and cir-

cumstances may be accepted and acted upon by the jury.'' Peoria & P. U. Ry. Co. v. Clayberg, 107 Ill. 650.

CHESTER M. DAWES and JOSEPH A. CONNELL attorneys for defendant in error.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

The plaintiff in error sued defendant in error in case for negligence · resulting in injury to the person of plaintiff. The court, at the conclusion of the plaintiff's evidence, instructed the jury that he had failed to prove his case, and that they should find the defendant· not guilty, and a verdict and judgment were rendered accordingly. The question is whether the court erred in taking the case from the jury.

The defendant's train, consisting of an engine, two baggage cars, a chair car, and a dining· car, in the order mentioned, bound west from Chicago, nearly reached Murray, in the State of Iowa, on January 15, 1890, when the dining car was derailed, thrown on its side, and dragged in that condition for a considerable distance. The train, at the time of the accident, was running between forty and fifty miles per hour. The plaintiff at that time had been in the employ of the defendant about ten and a half months as a cook, and was then serving as chief cook on the dining car. He relates the accident as follows: ''The train, a few minutes before 12 o'clock of January 15, was within a mile or half mile of Murray, Iowa, when the dining car left the track. Just as we were going into Murray I felt a sway of the train, and the next thing I knew the car had seemingly struck something and turned over on its side. The second and third cook, as the car turned, made a rush for the door, and they blocked the

door so that I couldn't get out that way, and I started to get out the other way, when something hot struck me, and I was inside the pantry door, the car went down and my leg went through the window. It seemed as if the car was going to pull me clear through, but by holding on to the inside of the box there it protected me some, and when the car quit running on its side and I was pulled up, this part of my leg was gone.''

It is admitted by defendant's counsel that the derailment of the car was the proximate cause of the accident, and the loss of plaintiff's leg.

The plaintiff further testified that his leg was amputated, that he was confined to his room thirty-one days, and was not able to do any work after the accident until May, 1895.

The situation at the place of derailment, and the circumstances attending the same, and subsequent thereto, are shown by the evidence to have been as follows: At the place of the accident there was a main track, and connected therewith a house track and a turntable track, these latter being connected with the main track by switches. The turntable switch was about one hundred and fifty feet east of the house track switch. The train approached the turntable switch from the east, and the engine, baggage cars and chair car passed that switch safely on the main track; part of the dining car also passed the switch, when it jumped the track, and the Pullman sleeper, which was next behind the dining car, took the switch, threw the dining car on its side, and passed on over the switch and turntable into a field. The contention of plaintiff is that the switch was not locked, and that the movement of the train caused it to open or expand. Thomas, who was second cook on the dining car, testified as follows: ''I saw the turntable switch about fifteen minutes after the

accident happened. There was nobody at the switch when I got there; there were three men coming there when I met them; the switch that was open and un-locked was the turntable switch." On cross-examination, Thomas testified: "I got out of the car about half a minute after it stopped, then went to the west end of the dining car, saw Henderson. The dining car was on its side. I went directly to the switch as I met the men. I don't think they were passengers; I don't think I can describe the switch without something to describe it by. The arm extended above the ground about three feet. The arm worked around. The arm fastened. It was notches and a piece of iron around the switch, a part of it, and a handle that worked the switch around on it. The notches were about two and a half feet from the ground. The lock was hanging by chains on the switch. I don't know whether it was attached by a rod or to a lever. It was a brass lock. The arm of the switch was in the notch, turned to the switch table; the switch turned from the track, that is, from the main track to the switch track, so that would when I got to the switch, it was set so that the train would go off of the main track to the turntable, and not down the main track. And the lever was in the notch that set the track to the switch. I saw no key in the lock; remained at the switch about two minutes and then went back to the chair car. I told Mr. Henderson that the switch was unlocked. No part of the switch lever was broken, the switch rod was not broken; there was nothing about the switch that was broken. There were three or four cars in front of the dining car and a Pullman sleeper in the rear."

Being asked, on cross-examination, to explain how, if the switch was set for the turntable track, the engine, baggage cars and chair car, went down the main track, he answered: "This switch was temporarily closed, the

switch to the turntable; the train was coming over the main line and the jostling of the train coming over the main track and the switch not being locked, caused the switch to expand, and when the sleeper came it had expanded enough to take this switch instead of following the train over the main track; caused it to jerk the hind trucks of the dining car off the track.  The force of the sleeping car striking the switch track and taking the switch to the turntable, forced the switch to set itself; that would set the switch in the notches or put the arm in the notches; when the switch is shoved over the lever drops in its place; without being locked the lever will jostle out of its place.  The lock was suspended to the switch by chains and wasn't locked or fastened in anything."

John D. Johnson testified:  "I was in the center of the car when the accident took place.  At the time that the dining car was derailed, it was going over the turntable switch.  The engine went over and all the rest of the cars went over until it struck the dining car, and when the dining car struck the switch it spread the switch a little, and when it came to the sleeper the switch was spread big enough so that it took the turntable switch and went into the field, and the dining car was thrown off. The front trucks or wheels kept the main track and the hind trucks took the other, and it was capsized.  The Pullman car was the last car, and it took the turntable switch complete and ran to the end out into the field. The dining car was capsized just as it got over the turntable switch—fell on its side and was dragged about 75 feet alongside of the track."

T. W. Campbell testified:  "I examined the turntable switch after the accident—the turntable switch was open.  The connecting rod or 'S' rod on the turntable switch was broken.  Just before the accident I saw a track-hand working on the turntable switch."

The testimony of a number of the witnesses is not abstracted, and defendant's counsel claim that the testimony of some of them conflicts with that of Thomas. If so, it is immaterial as to the question presented by the record, viz., whether there was any evidence tending to prove the plaintiff's case.

A motion to instruct the jury to find for the defendant is in the nature of a demurrer, and admits not only all the evidence proves, but all it tends to prove. Ward v. City of Chicago, 15 Ill. App. 98; Pennsylvania Co. v. Conlan, 101 Ill. 93; Frazer v. Howe et al., 106 Ill. 563.

The rule might be expressed more strongly. A motion to so instruct is a demurrer in all but the form. Its language, in legal contemplation, is that of a demurrer, viz., that the evidence is insufficient to support the plaintiff's action. Hence the rule that if the defendant, after making such motion, introduces evidence on the merits, he waives his motion. This, because if one will rely on a demurrer, he must abide by it. The testimony of Thomas is that the turntable switch was not locked, also that there was a brass lock hanging by a chain to the switch. Appellee's counsel object that from the fact that there was a lock at the switch, it can not be inferred that the lock was used to lock the switch; but it can not reasonably be presumed that the lock was merely ornamental, and we think it a fair inference, from the testimony of Thomas and other witnesses, that the purpose of the lock was to lock the switch—to secure it in its place. Joyce, whose testimony appellee's counsel quote from, says: "I saw the switch after the cars jumped the track, and the switch was not locked." Counsel for appellee contend that this was said of the house switch, which, after a careful reading of Joyce's deposition in the record, we think debatable. But, con-

ceding, for the sake of the argument, that Joyce meant the house switch, the inference from his statement is, that switches are locked, and appellee's counsel do not, in their argument contend that the lock at the turntable switch was not intended and used to lock the switch.

The case is one in which, had there been a contract to carry the plaintiff, proof of the accident would be sufficient to shift the burden of proof to the defendant. 1 Jones on Law of Evidence, Sec. 181; Murphy v. Coney, I. & B. R. R. Co., 36 Hun. 199; Curtis v. R. & S. R. Co., 18 N. Y., 534.

Counsel for appellee insist that the testimony of Thomas that he found the switch unlocked fifteen minutes after the accident, did not tend to prove its condition before or at the time of the accident. In Little Rock & Ft. Smith R. Co. v. Eubanks, 31 Am. & Eng. R. R. Cases, 176, the court say: "When a defective track is the cause of the casualty, it is often impracticable to adduce evidence of the condition of the track at the precise moment the casualty occurred. It is enough to prove such a state of facts shortly before or *after* as will induce a reasonable presumption that the condition is unchanged."

Substantially the same language is used in Stother v. R. Co., Ib. 229; City of Bloomington v. Osterle, 139 Ill. 120, and Chicago, P. & St. L. R'y Co. v. Lewis, 145 Ib. 67, 78.

We are of opinion that the court erred in taking the case from the jury. The judgment is reversed and the cause remanded.