## John F. Devine, Administrator, Appellee, v. Chicago Junction Railway Company, Appellant.

## Gen. No. 16,124.

1. EVIDENCE—*when book of rules competent.    Held,* in this case,
that a book of rules, established by stipulation as containing the rules
of the defendant company, was competent, the same having been in the
possession of the plaintiff's intestate for a number of years and found
after his death near the place where the accident occurred which resulted
in his death. ·

2. NEGLIGENCE—*effect of rules upon question of.    If a railroad
company adopt for the operation of cars in its yards, a rule, limiting the
speed of the operation of trains in such yard, there is impliedly an ad-
mission that such rule is reasonable and necessary for the protection of
the public and the employes of the company. ·

3. NEGLIGENCE—*what constitutes.* Absence of the exercise of ordinary care constitutes negligence. What in the exercise of ordinary care differs according to the facts and circumstances of the cases. The general rule, however, is that ordinary care is the exercise of that degree of care which a reasonably prudent man would exercise under the same circumstances.

4. NEGLIGENCE—*moving of cars contrary to rule.* If it be negligent to move cars at a rate of speed in excess of the maximum limit fixed by the rules of the company, it is none the less negligent frequently to pursue such a practice.

5. CONTRIBUTORY NEGLIGENCE—*when not question of law.* The conduct of a person cannot be said as a matter of law to be contributorily negligent unless such conduct has been shown by legal and competent evidence to be so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent.

6. PLEADING—*when defective declaration cured by verdict.* A declaration which defectively states a good cause of action is cured by verdict. *Held,* in this case, that the declaration states a good cause of action.

SMITH, J., dissenting.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the HON. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed February 6, 1912. Rehearing denied February 20, 1912. *Certiorari* denied by Supreme Court (making opinion final).

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN D. BLACK and JOHN C. SLADE, of counsel.

CHARLES J. TRAINOR, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This is an appeal from a judgment for $4,500 against appellant rendered in the Superior Court of Cook county, in a suit brought to recover for the alleged wrongful killing of one Leavitt, a conductor of a switching crew of the Chicago & Northwestern Railway Company, which last named company was originally a joint defendant with appellant, but, upon payment of $500, was given a covenant not to sue, and dismissed out of the case.

The accident occurred in a private switch-yard, known as the "East 47th Street Yard," located at the southern extremity of the Union Stock Yards in Chicago, just east of Center avenue,—a north and south street,—and directly north of 47th street, which extends east and west. The yard consists of some sixteen east and west parallel tracks, all of which, at their western extremities, curve to the northwest where they are connected by a series of converging leads and switches with two north and south tracks, known as the east and west main tracks. The sixteen tracks are numbered across the yard consecutively, beginning with "Number 1" at the north. The accident occurred on track 3.

The yard was used for the delivery of cars by the appellant company and their receipt by the various other railroads to which they were consigned; each company being assigned one or more tracks for the receipt of freight consigned to it. Track No. 1 was assigned to the Burlington road, while tracks Nos. 2 and 3 were the regular receiving tracks of the Northwestern,—and the Chicago, Milwaukee & St. Paul Railway Company had track No. 4. Each afternoon, the engines from the various companies would come into the yard shortly before five o'clock to get what was known as the "meat" train intended for that company. These various engines would wait until the meat cars were "kicked" or pushed in on the various tracks by appellant's engines, after which they would draw the cars on their respective tracks out of the yard, and upon the east main track,—the crew for each company striving to get away as early as possible.

Leavitt's crew came into the yard with its engine and caboose shortly before five o'clock on the afternoon of the day of the accident, and backed in on track No. 2, opposite the switch leading into track No. 3, to wait until their meat train should be made up.

Shortly after their arrival, seven cars were, by the appellant company, "kicked" back on track No. 3, and three or four others on track No. 4, in the same movement. Before these seven cars were put in, there were two meat cars standing on track No. 3, somewhere about 600 feet east of the switch. As conductor of the train, Leavitt's duty was to take the number and destination of each car in his train. When these were obtained, he brought them to the office of the clerk of the Chicago & Northwestern Railway Company, one Waldron by name. Waldron would have a list of the cars as furnished him by the appellant company, and he and Leavitt would compare their lists, and thereby ascertain whether all the cars intended for them had been placed on track No. 3. Track No. 3 extends south and east of the switch from the east and west main tracks, and makes an abrupt curve toward the east.

These seven cars, thus thrown in upon track No. 3, were moving with such speed that, after striking the two meat cars already standing upon the track, they were all driven east about five car lengths. The testimony as to the speed at which the seven cars were "kicked" in upon the track varied from 12 to 20 miles per hour. There was testimony to the effect that, shortly before these seven cars were "kicked" back, Waldron, the clerk whose duty it was to keep tab of the cars thrown in upon track No. 3, had found the two or three cars then upon the track, said to have been located about five car lengths from the switch, or just east of the curve; that, as he had no bill of consignment of the one of these cars nearest the switch, he took from the north side of the car the bill of consignment thereon, and brought it to his office for the purpose of making a bill therefrom.

The testimony in the case tended to show that in the discharge of his duty to take the respective numbers of the cars and the consignment of each, Leavitt came

to take the consignment of this car from its north side from which Waldron had taken the consignment card, so that it became necessary for Leavitt to pass around to the other side of the car to obtain the consignment card on its south side, there being ordinarily such a card upon each side of the car.   No one actually saw the accident, though, shortly before it occurred, Leavitt was seen by Burke, an inspector for the Chicago, Milwaukee & St. Paul Railway Company, who was then testing the wheels of cars being thrown in upon its track No. 4, and he had a few words with Leavitt. At this time Leavitt was standing between tracks No. 2 and No. 3, apparently taking the numbers off the end of the car that was nearest the switch, being the one from which Waldron had taken the destination card. At this time, by the shunting of cars on track No. 4, Burke's view of Leavitt was shut off, though he saw the cars coming in upon track No. 3, and, almost immediately thereafter, heard Leavitt call out.   From the marks in the cinders between the tracks, it appeared that Leavitt had been dragged about three car lengths, after which he was run over by four cars, and killed.   It also appeared from the testimony of one Turney, a car inspector for the Northwestern Railway, that it was a part of Leavitt's duty to see that the cars were sealed, and to enter in his book the condition of the seals of the cars before the trains were pulled out, and that there were seals on both sides of the cars.   The accident occurred on the 31st of March, 1905.   From the testimony it would appear that at the time of the accident there was still sufficient daylight to see several hundred feet if there were no obstruction.

At the time of his death, Leavitt was sixty-three years of age; for six years preceding he had been engaged in substantially the same manner as on the day of the accident; he was shown to be a man of careful habits, with good eyesight for a man of his age.   The

court admitted in evidence a "book of rules" of the appellant company, and there was testimony tending to show that this book was picked up, with some other things belonging to Leavitt, near where his body was found, and that it had been in his possession for some time.   Rule 16 on page 40 of this book, provided that the speed of trains in the Stock Yards district should be "governed by the city ordinances, fixing the speed of trains, extracts of which will be found in the back of this book," and on page 43 of this book of rules are set out extracts from the city ordinances, which provide that at the point in the district where these yards were located, the cars should not be operated at a greater speed than nine miles per hour.

The case went to the jury upon two counts:   The first count charges that defendants were jointly using and operating under a common arrangement a certain railroad track in the Stock Yards; that under the terms of that arrangement, the appellant company, with its own engines and employes, daily placed on said track all cars received by it for the Northwestern Railway Company, which last named company, with its own engines and employes, hauled said cars away from said track; that said track was constructed on a sharp and dangerous curve so that employes of the defendants, engaged in the conduct of the joint business done by said defendants on said track on certain points thereon, were unable to see or hear a train of cars coming around said curve, until too late to escape injury therefrom; that it thereupon became the duty of said defendants to conduct their said business with due care for the safety of the employes of either or both of said defendants, whose duty required them to be on or about said track; that on March 31, 1905, while said Leavitt (who upon this day was, and for some years prior thereto had been, employed by the Northwestern Railway Company as freight conductor, and as such had charge of cars placed upon said track

for said Northwestern Company, and of its engines and employes used in hauling said cars from said track), was in discharge of his duties, and with all due care and caution was upon or crossing said track at a point where he was unable to see or hear a train of cars coming around said curve, until too late to escape injury therefrom, a certain train of cars under the care and management of the servants of the appellant company, and without any engine attached thereto, was suddenly and carelessly "kicked," propelled and run upon said track by the appellant company, without the knowledge or warning to the deceased, at a high rate of speed, greatly in excess of the customary speed at said place, and against and upon said deceased, who was thereby then and there killed.

The second count was like the first, except that it contained an additional allegation with respect to the manner in which cars came in "and without any lookout or other person on the foremost of said cars to warn employes of defendants of the approach of said cars."

The grounds relied upon for reversal of the judgment are: First,—that the two counts above mentioned do not, nor does either of them, state a cause of action, nor is either of them sufficient to sustain the judgment; second,—that the evidence does not show the appellants guilty of negligence, causing the death of the deceased; third,—that appellee's intestate was guilty of contributory negligence without which the accident would not have occurred; fourth,—that the court erred in admitting in evidence the alleged "book of rules" of the Chicago Junction Ry. Co.

Taking up these propositions in their reverse order, we do not think the court erred in admitting in evidence the "book of rules" of appellant company. The identity of this book as a book of rules of the company is established by a stipulation filed in this court at the hearing, in which it is recited, "that it is stipulated be-

tween the parties hereto that the book, plaintiff's Exhibit 1, referred to in the Record herein, is a book issued by the Chicago Junction Ry. Co. as its rule book, or book of rules, and referred to on Record page 368,'' and we think the evidence justifies belief that this book had been in possession of the deceased for years, and that, after his death, it was found along the track at the point where he was struck by the car. We also are of the opinion that the facts and circumstances shown made at least a *prima facie* case to the effect that such rules were in force at the time of the accident. Rule 16 on page 40 of this book, by reference to page 43 thereof, fixed the rate of speed at which the cars of appellant company should be operated, at not more than nine miles per hour. We think the rules adopted by the company were proper evidence bearing upon the question of ordinary care on the part of the person injured, and also upon the question of negligence on the part of the defendants; indeed, the adoption of such a rule is impliedly a statement by the company that the rule is reasonable, and that it is necessary for the protection of the public and the employes of the company. Lake Shore & Michigan Southern R. R. Co. v. Ward, 135 Ill. 511-517; Chicago & Alton R. R. Co. v. Kelly, 182 Ill. 267-270; Chicago & Alton R. R. Co. v. Eaton, 194 Ill. 441. In passing upon the Kelly case, *supra,* the Supreme Court adopted the opinion of the Appellate Court in which, as bearing upon the question of ordinary care of deceased for his own safety, it was said, ''it is reasonable to infer from his length of service that he was acquainted with the rules of appellant in respect to the running of its trains, and that he would, in the exercise of ordinary care, conform his actions in respect thereto.'' In the Eaton case, *supra,* the court held:

''Whether appellant is guilty of neglect or the deceased of contributory negligence are questions of fact

for the jury, and the adoption of the rules above re-
ferred to (being the rules of the Chicago & Alton
Company) is an admission by appellant that ordinary
care required the course of conduct prescribed there-
in (L. S. & M. S. v. Ward, 135 Ill. 511), and the jury
will be justified in finding that if said rule had been
obeyed the accident would not have happened.    (Chi-
cago, St. Paul & Kansas City Ry. Co. v. Ryan, 165 Ill.
88.)    And the court continued and said that, relying
upon the rule, deceased had the right to assume that
the employes of the company would obey the rule and
that had they obeyed the rule he could have proceeded
safely in the manner which he did.''

Under these authorities, we think it clear that the
rules were competent and admissible upon the ques-
tion of ordinary care on the part of the deceased, and
an admission on the part of the appellant company as
to what constituted ordinary care on its part in the
movement of its cars under the circumstances dis-
closed by the testimony in this case.

Upon the question of contributory negligence of the
deceased, the testimony in the case leaves room for
some uncertainty and doubt.    If we were now con-
sidering it as an entirely new proposition, and one
which we were at liberty to decide from our own im-
pressions, we might reach a different conclusion than
that reached by the jury.    There is no question that
the deceased was engaged in a hazardous occupation,
and one which required a high degree of caution and
watchfulness to avoid injury.    He had long exper-
ience in the service and was familiar with the yard
and the use of the switch tracks.    It is not quite clear
that there was any necessity for his being upon the
track at the time of the injury; even upon the assump-
tion that, in the performance of his duty, he was re-
quired to go upon both sides of track No. 3, he was
certainly bound to exercise a proper degree of caution
in doing so.    He must have known, or at least have

expected, that other cars than the two which he was apparently inspecting, would be "kicked" or thrown in on the track at about that time.    On the other hand, it must be remembered that track No. 3 was being used to receive cars consigned by the Northwestern Company and placed thereon by the appellant company, and it was the duty of the deceased to procure the number of each car, together with its destination.  To secure the latter, it was necessary to inspect a consignment, or destination card which is placed in a small wire cage on either side of the car.    It was his duty to know when all the cars that were intended to constitute his train, had been received upon his track and to have a complete description of each car and its consignment and destination and compare it with the yard clerk before his train pulled out.    We think it a reasonable inference from the testimony, that the deceased was crossing from the north to the south side of track No. 3 to obtain the destination of that car, which would be ascertained by inspecting the card on the south side of the west car, the card on the north side having been removed.

The evidence shows without contradiction that Leavitt was and had been a careful man; that he was a man of family, and was sober and industrious.    The fact that he had been in the employ of the Northwestern Railway Company for many years, in charge of one of its trains, tends to establish his competency as an employe as well as character, prudence and sobriety.    From the evidence it seems to us that Leavitt's duties fairly contemplated his crossing the tracks. His crossing track No. 3 from one side to the other of the cars to procure the needed information for his report to the yard clerk, although he must have known that it involved some hazard or risk, was not necessarily negligence because he was evidently required to perform this duty, and in so doing, was obliged to use only such care for his own safety as would be usual

and ordinary care under the circumstances. If the seven cars, which were "kicked" in, came around the curve at from 15 to 18 miles an hour, and if, when standing immediately north of the north rail of track No. 3 and looking in the direction from which the cars were coming, they would be seen only at a distance of not more than two or three car-lengths, his injury might be attributable to the speed at which the cars were being driven around the curve so much in excess of the speed he had a right to expect, under the rules of the company, they would be moved. Contributory negligence on the part of the deceased is not to be presumed; nor must the proof of due care and caution required, necessarily be made by direct evidence. It has been repeatedly held by our Supreme Court that where there are no eye witnesses to the accident, the jury may consider, as tending to prove due care and caution on the part of the injured party, the instinct of self-preservation, his family ties, usual care and caution, etc. See, among other cases, the following: Illinois Central R. R. Co. v. Prickett, 210 Ill. 140; E. J. & E. Ry. Co. v. Hoadley, 220 Ill. 462.

It is a question of fact for the jury whether the deceased exercised ordinary care, and this court cannot say as a matter of law, that contributory negligence has been established, unless the conduct of the deceased has been shown, by legal and competent evidence, so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent. Illinois Central R. R. Co. v. Anderson, 81 Ill. App. 137, affirmed in 184 Ill. 294.

As to the negligence of appellant company, this, too, is a question of fact to be determined by a jury. It must be conceded that even assuming that Leavitt's occupation was a hazardous one, he had a legal right to demand that ordinary care should be taken by the defendants not to unnecessarily inflict any injury upon him. This ordinary care would be different in

one case from what might be required in another, but in any event, it must be such care as a reasonably prudent man would exercise under the same circumstances.    Absence of such ordinary care would constitute negligence if injury resulted.    In this case, it is urged that the deceased knew that appellant company had been accustomed to "kick" in cars upon these tracks at a high rate of speed.    Even if the fact be conceded, it still remains true that if it were negligent to move the cars at such a rapid rate of speed in violation of their own rules, it would not cease to be negligence because frequently done.    Negligence is the want of that degree of care which the law requires in a given case.    Putney v. Keith, 98 Ill. App. 285; Illinois Central R. R. Co. v. Behrens, 101 Ill. App. 33. Under the arrangements shown to exist between the appellant company and the Northwestern Railway Company, we think both companies were liable to the employes of either who, in the absence of contributory negligence, might be injured by the negligence of either of them, and that each company is chargeable with notice as to the employes of the other engaged on its tracks.    Illinois Central R. R. Co. v. Frelka, 110 Ill. 498; O'Sullivan v. C. M. & St. P. Ry. Co., 23 Ill. App. 646.

In the case of Pennsylvania Co. v. Conlan, 101 Ill. 93, Conlan was employed by the Chicago & Alton R. R. Co., which company, with the Pennsylvania Co., were jointly using certain tracks.    Conlan was in a switching crew of the Chicago & Alton R. R. Co. and was killed by an engine that was owned and operated by the Pennsylvania Co.    He was crossing the track on which the Pennsylvania Company's engine was running at the time he was killed, and had been taking the numbers of the cars of the train that his crew was making up.    In the declaration it was alleged that Conlan was on the track, on which he was killed, in the exercise of his duties as such switchman, and that

while in the discharge of such duty, with due care and caution, and without negligence on his part, while so passing over and along the track, the Pennsylvania Company negligently drove its engine and train without sufficient headlight, and injured the deceased,— and the court held that the gist of the action was the negligence of the Pennsylvania Company,—and that the motive of the deceased in being upon the track was wholly immaterial, it being sufficient that he was lawfully there.    Negligence was held to be a question of fact for the jury in that case; and we do not think the fact that in that case the city ordinance was admitted in evidence, while in the case at bar it was not admitted, is important.    In the case at bar the appellant company had adopted a portion of the city ordinance, limiting the speed of trains and cars to nine miles per hour, as a part of its rules; and, as we have before held, these rules were admissible in evidence as an admission of the appellant company of what was necessary on its part to observe ordinary care, as well as tending to show that the deceased was exercising reasonable care.    That whether crossing a track under particular circumstances is or is not negligence, is a jury question—see Pennsylvania Company v. Conlan, *supra;* Village of Clayton v. Brooks, 150 Ill. 97; L. E. & W. R. R. Co. v. Middleton, 142 Ill. 550; L. S. & M. S. Ry. Co. v. Parker, 131 Ill. 557.    This question of negligence of appellant company, as well as that of the contributory negligence of deceased are also questions of fact for a jury, whose verdict in relation thereto should not be set aside unless this court finds that such verdict is either unsupported by the evidence, or is against the manifest weight of the evidence upon these questions,—neither of which do we find.

Appellant strenuously insists that the declaration does not state a cause of action and is insufficient to sustain a judgment, and cites in support of its contention McAndrews v. C. L. S. & E. Ry. Co., 222 Ill.

232, and Mackey v. Northern Milling Co., 210 *id.* 115. In the McAndrews case it was alleged that plaintiff was upon and about to unload a car standing upon one of the tracks of the defendant railroad, and while exercising ordinary care, etc., the company, without giving the plaintiff any warning, negligently pushed certain other cars against that on which the plaintiff was standing. It was claimed that the declaration did not aver substantive facts showing that the company owed the plaintiff any duty to warn him that it was about to move the cars, and the Supreme Court sustained the contention. It should be noted that the charge of negligence in the declaration in that case was merely that the railroad company did not warn the deceased, and the court held that the declaration did not state any facts showing an obligation on its part to do so.

The Mackey case was decided in favor of the defendant upon the ground that the allegation in the declaration that appellant was "lawfully" upon the track, was not sufficient to put the defendant company in the attitude of being negligent; but the court further said that "it is not stated that Mackey's duties necessarily required him to be on the side-track at the time of the accident, or that he was performing any duty he owed appellee, or that appellee had any reason to believe or suspect that said Mackey would be there in a position of danger." In the case at bar the declaration alleges the joint operation, and control of the track; that the appellant company placed cars upon that track for the Northwestern Company which the latter hauled away; that the track was constructed upon a sharp curve, and that it became the duty of the defendants in the joint operation of said track to conduct their business with due care for the safety of employes of either of said defendants whose duties required them to be on or about said track or to cross same, and that the appellant company failed

to do so; that Leavitt, who was an employe of the Northwestern Company, and had charge of the cars placed on the track for it, was in the discharge of his said duties, and, with due care and caution for his own safety, crossing said track.   We are of the opinion that the averments in the declaration in the case at bar are sufficient to distinguish the case from the Mackey and McAndrews cases, and that appellant's contention in relation thereto cannot be sustained.

If the declaration in the case at bar states a cause of action, as we think it does, even though the declaration is in such general terms as to constitute a defective statement of the cause of action, appellant should have raised its objection to the sufficiency of the declaration in the court below, and by appropriate action preserved its rights to challenge the declaration upon such grounds in this court.   See Chicago & Alton R. R. Co. v. Clausen, 173 Ill. 100, where it is said, "a defect in pleading, in substance or form, which would be fatal on demurrer, is cured by verdict where the issue joined is such as necessarily requires proof of the facts so imperfectly stated or omitted."

The judgment of the court below will be affirmed.

*Judgment affirmed.*

MR. JUSTICE SMITH dissents.